[No. 4480–1.   Division One.   May 31, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. NORTHWEST PASSAGE, INC., *Appellant.*

*Stephen J. Hillman* and *John H. Anderson,* for appellant.

*David S. McEachran, Prosecuting Attorney,* and *Dennis J. De Felice, Deputy,* for respondent.

WILLIAMS, J.—Northwest Passage, Inc., a newspaper of general circulation published in Whatcom County, was charged with the commission of a gross misdemeanor under RCW 9.26A.090, which reads in pertinent part:

> Every person who publishes . . . the numbering or coding which is employed in the issuance of telephone company credit cards, with the intent that it be used or

with knowledge or reason to believe that it will be used to avoid the payment of any lawful charge, shall be guilty of a gross misdemeanor.

Trial to a jury resulted in a verdict of guilty. Northwest Passage appeals from the judgment entered thereon, contending that the statute is unconstitutional because it abridges free speech in violation of the first and fourteenth amendments to the United States Constitution, and in violation of article 1, section 5 of the Washington State Constitution.

A feature in the March 17–30, 1975, issue of Northwest Passage entitled "Credit Card Calls" listed the telephone area code and revenue accounting code numbers of several cities in the United States, and then stated that telephone credit card numbers are composed of the caller's telephone number, the revenue accounting code number designated for the caller's city and a certain letter of the alphabet. According to the article, the letter "corresponds to the fourth digit [of the caller's telephone number] in the following manner: 1–E; 2–M; 3–U; 4–J; 5–Q; 6–A; 7–W; 8–Z; 9–H; and 0–R."

In the area of freedom of speech and press, guiding rules are: "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right." Const. art. 1, § 5; any restraint imposed upon a constitutionally protected medium of expression comes into court bearing a heavy presumption against its constitutionality. *Freedman v. Maryland,* 380 U.S. 51, 13 L. Ed. 2d 649, 85 S. Ct. 734 (1965); *Seattle v. Bittner,* 81 Wn.2d 747, 505 P.2d 126 (1973); mere legislative preferences or beliefs standing alone will not support legislation limiting First Amendment rights, *Schneider v. New Jersey,* 308 U.S. 147, 84 L. Ed. 155, 60 S. Ct. 146 (1939); *State v. Conifer Enterprises, Inc.,* 82 Wn.2d 94, 508 P.2d 149 (1973); "These freedoms are delicate and vulnerable, as well as supremely precious in our society." *NAACP v. Button,* 371 U.S. 415, 433, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963). *Bare v. Gorton,* 84 Wn.2d 380, 526 P.2d 379 (1974).

Not all restraints on speech or publication are forbidden by the First Amendment. *Seattle v. Bittner, supra.* Printed matter that is willfully published to encourage or incite a breach of state law is not entitled to constitutional protection. *State v. Fox,* 71 Wash. 185, 127 P. 1111 (1912), *aff'd,* 236 U.S. 273, 59 L. Ed. 573, 35 S. Ct. 383 (1915); *see* RCW 9.05.150. Accordingly, publication of the coding employed in the issuance of telephone credit cards with the intent that the information be used to avoid lawful charges is not protected by the First Amendment.

██ ██ There is, however, an additional problem. In the statute, an alternative to the requirement of intent is that the publication be "with knowledge or reason to believe" that it will be used to avoid the payment of any lawful charge. It is readily apparent that such a stricture will inhibit the exercise of the right of free expression. Book stalls contain countless volumes of mystery and detective stories which deal with various ingenious methods of committing murder and other crimes. The authors of these tales assuredly do not intend that those methods be used to commit crime, but they may well have reason to believe that, sooner or later, persons of criminal bent will adopt the tactics described. Persons interested, professionally or otherwise, in systems of secret writing should not be prevented from publishing their knowledge and views on that subject because of fear of violating RCW 9.26A.090, even though they may have reason to believe that someone may use the information for an unlawful purpose.

The United States Supreme Court said in *NAACP v. Button, supra* at 432–33:

The objectionable quality of vagueness and overbreadth does not depend upon absence of fair notice to a criminally accused or upon unchanneled delegation of legislative powers, but upon the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application. Cf. *Marcus* v. *Search Warrant,* 367 U. S. 717, 733. These freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of

sanctions may deter their exercise almost as potently as the actual application of sanctions. Cf. *Smith* v. *California,* [361 U.S. 147] at 151–154; *Speiser* v. *Randall,* 357 U. S. 513, 526. Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity. *Cantwell* v. *Connecticut,* 310 U. S. 296, 311.

When a case is submitted to the jury on alternative theories, and one of the theories is in violation of the constitution, the conviction must be set aside, because there is no way of knowing upon which theory the case was decided. *Leary v. United States,* 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532 (1969); *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977).

Reversed with direction to dismiss.

CALLOW, J., concurs.

ANDERSEN, J. (concurring in the result)—Reduced to its essence, this case involves a newspaper that was convicted of a crime for publishing certain information regarding telephone company credit cards. No precedent has been cited to us from this jurisdiction or any other wherein a comparable criminal statute has been upheld in the face of appropriate constitutional challenge.

Absent persuasive and compelling authority to the contrary, this case must be controlled by the principle that freedom of news media is one of the fundamental liberties guaranteed by the first amendment to the United States Constitution and this basic freedom must be zealously preserved. For this reason, although I consider the article in question to be totally irresponsible, I concur in the result reached by the majority.

Petition for rehearing denied August 9, 1977.

Review granted by Supreme Court January 20, 1978.