[No. 45099.   En Banc.   October 26, 1978.]

THE STATE OF WASHINGTON, *Petitioner,* v. NORTHWEST PASSAGE, INC., *Respondent.*

*David S. McEachran, Prosecuting Attorney,* and *Dennis J. De Felice* and *Mark Bantz, Deputies,* for petitioner.

*John H. Anderson* and *Stephen J. Hillman,* for respondent.

*Alfred J. Schweppe* on behalf of Pacific Northwest Bell, amicus curiae.

DOLLIVER, J.—Defendant Northwest Passage, Inc., publisher of the newspaper Northwest Passage, was convicted of violating RCW 9.26A.090 which proscribes publication of information regarding coding of telephone company credit card charge numbers. Defendant was fined $1,000 with the fine suspended on condition it publish an inventory of community resources in Whatcom County to be distributed throughout the county and pay costs. Defendant appealed and the conviction was reversed by the Court of Appeals which found the statute unconstitutional. *See State v. Northwest Passage, Inc.,* 17 Wn. App. 685, 564 P.2d 1188 (1977). We granted petition for review.

In the March 17–30, 1975, issue of its newspaper, defendant published an article divulging information which educated the reader in the method used by the telephone company to establish credit card numbers for its subscribers. The article further advised readers of techniques to employ so as to escape detection when placing a call with a falsely created number. A fair reading of the article is that its sole purpose was to tell readers how to defraud the telephone company and how to avoid being caught.

RCW 9.26A.090 provides, in pertinent part:

Every person who publishes . . . the numbering or coding which is employed in the issuance of telephone company credit cards, with the intent that it be used or with knowledge or reason to believe that it will be used to avoid the payment of any lawful charge, shall be guilty of a gross misdemeanor.

The Court of Appeals concluded persons interested in systems of secret writing may be deterred from publishing their knowledge due to fear of violating RCW 9.26A.090, and thus the statute is overbroad and so proscribed by the First Amendment. We disagree and reverse.

█ In interpreting the First Amendment, the United States Supreme Court has employed a balancing test in freedom of speech and freedom of the press cases. *See United States v. O'Brien,* 391 U.S. 367, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968), and *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 49 L. Ed. 2d 683, 96 S. Ct. 2791 (1976). Similarly, a balancing test has been used by this court. As we stated in *State v. Oyen,* 78 Wn.2d 909, 919, 480 P.2d 766 (1971), *vacated on other grounds,* 408 U.S. 933, 33 L. Ed. 2d 745, 92 S. Ct. 2846 (1972):

[I]t is incumbent upon the court to weigh the purported impairment of speech engendered by the statutory provision against the importance of the societal interest sought to be vindicated by the statute, as well as the nature and extent of the threat which the statutorily forbidden conduct poses to that interest. And, too, the alternatives available to the state and the claimant must be evaluated, *i.e.,* whether the state may achieve its ends in a less restrictive manner and/or the claimant effect his communication in a way less detrimental to the societal interest.

We reaffirm that approach and apply it to this case. Following *Oyen,* we consider four questions: First, how broad is the purported impairment of speech? Only the publication of individual credit card numbers and the secret code by which they are derived is forbidden by RCW 9.26A.090. The narrow restrictions on speech imposed by the statute

are de minimis and only coincidental to the limited purpose of the statute. No political speech such as criticism, comment and public discussion regarding operations and practices of the telephone company falls within the statute's ambit. Nor does the statute bar the kind of "frequently unpleasant" free speech of "little or no value" which the First Amendment protects as it "enter[s] the marketplace of ideas, threatening the quality of our social discourse and, more generally, the serenity of our lives." *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 88, 49 L. Ed. 2d 310, 96 S. Ct. 2440 (1976), per Stewart, J., dissenting. *See also Brandenburg v. Ohio*, 395 U.S. 444, 23 L. Ed. 2d 430, 89 S. Ct. 1827 (1969).

*Second, what is the societal interest sought to be protected?* The purpose of the statute is to prevent persons from defrauding the telephone company through use of false credit card numbers. Testimony adduced at trial indicated such calls resulted in a $70,000 revenue loss to the company during a 9–month period in 1975, a loss which must be made up by the ratepayer. Prevention of this fraud is a sufficient societal interest to support the legislation in question.

*Third, what threat to the societal interest is posed by the proscribed conduct?* Defendant asserts no threat to the societal interest is posed by publication of the codes because the evidence shows no increase in the number of fraudulent credit calls after publication of the code in its paper. However, we must look beyond the individual publication prosecuted herein to determine the nexus between the proscribed conduct and the societal interest. That widespread publication of the secret code would threaten an increase in the abuse of the telephone credit system is well founded in logic and hardly requires empirical verification.

*Finally, what less restrictive alternatives are available?* Defendant argues the enforcement of RCW 9.45.240 which forbids use of a false credit card number to place a call is all that is necessary to protect the societal interest. The

method the telephone company has chosen to eliminate the use of a false credit card number is the use of a secret coding system. With knowledge of the code, an operator can detect users who attempt to place calls with credit card numbers which do not fit within the coding system. As long as the code is kept secret, it is virtually impossible to create a false credit card number which fits within the code and RCW 9.45.240 would arguably be sufficient. However, if this code is not kept secret but is disclosed to the public, the effectiveness of RCW 9.45.240 is lost. It is only when the secrecy of the code is breached, as was done by defendant, that RCW 9.26A.090 becomes necessary. Defendant's publication of the code destroys its own argument.

Defendant also argued the matter could be resolved if telephone companies would change their business practices and procedures. It is an argument of questionable grace and no merit.

■ In balancing the above factors, we conclude RCW 9.26A.090 is not overbroad. The statute is directed at a legitimate state objective—protection against fraud. The United States Supreme Court in *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 37 L. Ed. 2d 830, 93 S. Ct. 2908 (1973), evaluated certain Oklahoma statutes which restricted the political activities of the state's classified civil servants. In upholding those statutes, the court stated:

[O]verbreadth adjudication is an exception to our traditional rules of practice and . . . its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe.

To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.

(Citation omitted.)

RCW 9.26A.090 does not substantially restrict protected speech when judged in relation to the statute's legitimate function of preventing fraud.

The Court of Appeals is reversed and the trial court is affirmed.

WRIGHT, C.J., and HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and HICKS, JJ., concur.

ROSELLINI, J. (dissenting)—For the reasons expressed in the opinion of the Court of Appeals, and for the further reason that I believe the publication of information in a newspaper is conduct which is entitled to protection under the first amendment to the United States Constitution and article 1, section 5 of the Washington Constitution, I would affirm the Court of Appeals.

Petition for rehearing denied December 14, 1978.