[No. 19302-3-I.   Division One.   April 4, 1988.]

THE CITY OF SEATTLE, *Respondent,* v. DALE B. HUFF, *Petitioner.*

*Robert Adelman* of *Seattle–King County Public Defender Association,* for petitioner.

*Douglas N. Jewett, City Attorney,* and *Douglas B. Whalley, Assistant,* for respondent.

PEKELIS, J.—Dale Huff appeals the Superior Court's decision reversing the Municipal Court's order to dismiss the criminal charges against him. Huff contends that the charges should be dismissed because Seattle's telephone harassment ordinance (Seattle Municipal Code (SMC) 12A.06.100(3)) is unconstitutionally vague and overbroad. We affirm the Superior Court's decision, but on other grounds.

## FACTS[1]

On December 18, 1985, Seattle police arrested Huff for "Investigation of Fraud." While in jail, Huff allegedly made

---

[1]Since there was no trial in this case, these facts are taken from the police report. Huff does not concede that the police report correctly states the facts surrounding his arrest or the subsequent charges filed against him.

two telephone calls: one to the victim and one to his mother in which he allegedly said he was "going to get even" with them. Huff's mother reported that she did not fear him, but that she would not be able to sleep the rest of the night and that she thought Huff would "tear up her house if he [were] released." As a result of these telephone calls, Huff was charged with telephone harassment in violation of SMC 12A.06.100(3).

SMC 12A.06.100(3) prohibits:

Telephone calls to harass, intimidate, torment or embarrass.

A. A person is guilty of making telephone calls to harass, intimidate, torment or embarrass any other person if, with intent to harass, intimidate, torment or embarrass any other person, he makes a telephone call to such other person:

. . .

3. Threatening to inflict injury on the person or property of the person called or any member of his family

. . .

Prior to trial, Huff moved to dismiss the charges, challenging the constitutionality of Seattle's ordinance as both overbroad and vague. Although the Municipal Court upheld the constitutionality of the ordinance, the court limited its reach to "fighting words." Since Seattle's prosecution of Huff was effectively terminated, the case was dismissed. Seattle appealed to the King County Superior Court. That court upheld the constitutionality of the ordinance as written, reversing the Municipal Court's dismissal of the case. Huff's motion for discretionary review by this court was granted on January 13, 1987.

## ANALYSIS

Any legislative restraint imposed upon First Amendment rights "'comes into court bearing a heavy presumption against its constitutionality.'" (Italics omitted.) *State v. Conifer Enters.,* 82 Wn.2d 94, 99, 508 P.2d 149 (1973) (quoting *Fine Arts Guild, Inc. v. Seattle,* 74 Wn.2d 503,

506, 445 P.2d 602 (1968)). However, this court must, wherever possible, construe a statute so as to uphold its constitutionality. *State v. Reyes,* 104 Wn.2d 35, 41, 700 P.2d 1155 (1985). If the invalid reach of a law can be cured by a limiting construction, then "there is no reason to proscribe the statute's application to unprotected speech." *Reyes,* 104 Wn.2d at 41.

Huff contends that SMC 12A.06.100(3) is unconstitutionally overbroad because it sweeps within its proscription speech protected by the Washington State Constitution and the first amendment to the United States Constitution. He asserts, *inter alia,* that Seattle's ordinance is unconstitutional because it (1) includes calls intended to "embarrass" the listener; (2) fails to limit its reach to calls directed to the home; (3) fails to require that the call actually harm the listener; and (4) fails to require that the caller have the capacity to carry out the threat.

█ We note at the outset that Huff challenges Seattle's ordinance as *facially* overbroad. Thus, we test the constitutionality of the ordinance as it is written without reference to whether Huff's particular conduct may or may not be constitutionally protected. *See Reyes,* 104 Wn.2d at 43. A law is unconstitutionally overbroad if it may prohibit constitutionally protected activity. *Everett v. Moore,* 37 Wn. App. 862, 864, 683 P.2d 617 (1984) (citing *Blondheim v. State,* 84 Wn.2d 874, 878, 529 P.2d 1096 (1975)). However, a law that makes certain conduct illegal is not automatically unconstitutional merely because "the right of free speech may be intermingled with the condemned conduct." *State v. Oyen,* 78 Wn.2d 909, 918, 480 P.2d 766 (1971), *vacated on other grounds,* 408 U.S. 933, 33 L. Ed. 2d 745, 92 S. Ct. 2846 (1972). The reviewing court must first balance the impairment of speech against the importance of the societal interest furthered by the enactment. *State v. Northwest Passage, Inc.,* 90 Wn.2d 741, 743, 585 P.2d 794 (1978) (citing *Oyen,* 78 Wn.2d at 919; *United States v.*

*O'Brien,* 391 U.S. 367, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968); *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 49 L. Ed. 2d 683, 96 S. Ct. 2791 (1976)). The court must then consider whether the State may achieve its ends in a less restrictive manner or whether the speaker can exercise his First Amendment rights "in a way less detrimental to the societal interest." *Oyen,* 78 Wn.2d at 919.

Huff first contends that Seattle can demonstrate no compelling interest in criminalizing telephone calls that are merely intended to "embarrass" the listener. We agree. *Webster's* defines "embarrass" as:

> to hamper or impede the movement or freedom of movement of (as a person) . . . to place in doubt, perplexity, or difficulties . . . to involve (as a person or his affairs) in difficulties concerning money matters . . . to cause to experience a state of self-conscious distress: Abash . . . to impair the activity of (a bodily function) . . . to make intricate: Complicate . . .

*Webster's Third New International Dictionary* 739 (1969).

■ By criminalizing threatening telephone calls intended to "embarrass", the ordinance proscribes constitutionally protected speech in a myriad of political, social and familial settings. For example, a person who calls her congressional representative intending to embarrass him by threatening to break down his door if he does not improve his voting record violates the ordinance. Similarly, a person who telephones his son intending to embarrass him by threatening to flatten his tires if he does not stop drinking and driving would violate the ordinance. Seattle cannot demonstrate a compelling need to protect its residents from embarrassment that would justify such an invasion of the First Amendment. Embarrassing telephone calls might be unpleasant, but whatever discomfort the listener may suffer pales in comparison to the speaker's right to express his thoughts freely. The City's interest in protecting its residents from embarrassment must simply give way to an individual's right to freedom of expression. Accordingly, we strike "embarrass" from SMC 12A.06.100(3).

We next consider whether threatening telephone calls intended to harass, intimidate or torment may be proscribed without unreasonably interfering with the First Amendment. Seattle unquestionably has a legitimate and substantial interest in protecting its residents from "fear and abuse at the hands of persons who employ the telephone" to harass, torment and intimidate others. *Everett,* 37 Wn. App. at 865. However, Huff's right of free expression is a preferred right under the Washington Constitution. *Reyes,* 104 Wn.2d at 43. Thus, Seattle's ordinance must strike an acceptable balance between the legitimate protection of its citizens from threatening telephone calls and an individual's right of expression.

Huff contends that SMC 12A.06.100(3) does not distinguish between threatening telephone calls that the First Amendment protects and those that it does not. Huff cites a number of cases from other jurisdictions in which courts have limited telephone harassment laws in a variety of ways in an attempt to make such a distinction. For example, some courts have interpreted the statute or ordinance to require that the caller know his threat is likely to cause the addressee harm either because of its nature or because of earlier calls. *See State v. Moyle,* 299 Or. 691, 705 P.2d 740, 748 (1985) (threat limited to violent felonies so that caller would be reasonably expected to know that the threat would instill fear); *see also United States v. Darsey,* 342 F. Supp. 311, 313 (E.D. Pa. 1972) (ordinance's requirement that calls be repeated is an important limiting restriction). Other courts have focused on the listener's reaction to the call, requiring that the caller produce actual harm, such as fear. *State v. Blair,* 287 Or. 519, 601 P.2d 766, 768 (1979); *see also Wurtz v. Risley,* 719 F.2d 1438, 1442 (9th Cir. 1983) (statute held unconstitutionally overbroad in part because it included threats not likely to produce a belief that they would be carried out).

18

■ However, none of these cases holds or implies that the restrictions imposed therein must necessarily be imposed on all other telephone harassment laws. Rather, the need for a particular restriction depends on the specific language of the ordinance in question. We hold that no further limiting construction is needed here in order for Seattle's ordinance to pass constitutional muster. SMC 12A.06.100(3) plainly narrows its application to calls threatening the listener (or his family) with physical or property damage which are not intended to communicate, but rather to harass, intimidate, or torment. Conversely, by the plain language of the ordinance, where the caller's threats, unpleasant as they may be, are intended to communicate ideas and not simply to harass, intimidate or torment, SMC 12A.06.100(3) is not violated.[2]

CONCLUSION

By striking "embarrass" from SMC 12A.06.100(3), the ordinance's overbreadth is cured because its application is limited on its face to unprotected speech: threats to the addressee's person or property made over the telephone with the intent to harass, intimidate or torment. In addition, by so limiting Seattle's ordinance, we find that SMC 12A.06.100(3) is sufficiently definite to survive Huff's challenge that the ordinance is unconstitutionally vague.[3]

---

[2]Although a prosecution for such protected speech could not be sustained, the ordinance itself remains constitutionally valid. *See Watts v. United States,* 394 U.S. 705, 707, 22 L. Ed. 2d 664, 89 S. Ct. 1399 (1969) (although the Court dismissed the prosecution because Watt's statement was protected speech as distinguished from a "genuine" threat, it nevertheless upheld the statute as facially constitutional).

[3]Huff also contends that *Everett v. Moore,* 37 Wn. App. 862, 683 P.2d 617 (1984) requires SMC 12A.06.100(3) to limit its reach to telephone calls directed to the listener's home. While *Everett* suggested in dicta that this restriction might help tip the balance in favor of upholding that ordinance as constitutional, the court did not hold that such a restriction was constitutionally required in all telephone harassment ordinances. *Everett,* 37 Wn. App. at 865.

Affirm.

SCHOLFIELD, C.J., and SWANSON, J., concur.

Review granted by Supreme Court July 5, 1988.