[Nos. 31925-6-I; 31945-1-I. Division One. February 6, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD ALEXANDER, *Petitioner*.

THE CITY OF SEATTLE, *Respondent*, v. PAMELA POTTER, *Petitioner*.

832

*Miriam Schwartz*, for petitioners.

*Norm Maleng*, Prosecuting Attorney, and *Roger Rogoff, Deputy; Mark H. Sidran, City Attorney*, and *Margaret Boyle, Assistant*, for respondents.

COLEMAN, J. — Pamela Potter and Richard Alexander appeal their convictions for telephone harassment. They allege that the laws under which they were convicted are unconstitutionally overbroad and vague. We affirm.

On four successive days in April 1990, Pamela Potter made 680 "hang-up" telephone calls to the United Way Crisis Clinic. She was charged by complaint in Seattle Municipal Court with two counts of telephone harassment pursuant to Seattle Municipal Code (SMC) 12A.06.100. That ordinance reads in pertinent part:

> A person is guilty of making telephone calls to harass, intimidate, torment or embarrass any other person if, with intent to harass, intimidate, torment or embarrass any other person, he makes a telephone call to such other person:
>
> . . . .

2. Anonymously or repeatedly or at an extremely inconvenient hour, whether or not conversation ensues[.]

SMC 12A.06.100(A)(2). The jury convicted Potter of both counts after receiving an instruction, which was based on this ordinance, that omitted any reference to the term "embarrass". The King County Superior Court affirmed on RALJ appeal. Potter then sought discretionary review in the Court of Appeals, which was granted.

Richard Alexander called his former girlfriend over a period of months, up to 15 times a day, at all hours, and with foul language. He was charged in Shoreline District Court with telephone harassment in violation of RCW 9.61.230. Under that statute, a person commits a crime when he makes a telephone call to another person

> with intent to harass, intimidate, torment or embarrass . . . such other person:
> (1) Using any lewd, lascivious, profane, indecent, or obscene words or language, or suggesting the commission of any lewd or lascivious act; or
> (2) Anonymously or repeatedly or at an extremely inconvenient hour, whether or not conversation ensues[.]

RCW 9.61.230. Prior to trial, Alexander moved to dismiss the charge, challenging the constitutionality of the statute as overbroad and vague. The court denied the motion.

The jury was instructed that, to convict Alexander, it would have to find that he had "either: (a) used profane words or language, or (b) telephone[d] anonymously or repeatedly or at an extremely inconvenient hour, whether or not conversation ensued", with intent to harass, intimidate, torment or embarrass the former girlfriend. The jury convicted Alexander as charged. On RALJ appeal the King County Superior Court affirmed his conviction. This court granted discretionary review and consolidated the two appeals.

■ We first determine whether RCW 9.61.230 and SMC 12A.06.100 are unconstitutionally overbroad. Alexander contends that the language "to embarrass" contained in the statute is unconstitutionally overbroad. Potter and Alexder challenge the breadth of both enactments in their entirety. As an initial matter, we find that Potter and Alex-

ander correctly assert that they have standing to challenge the facial validity of the provisions at issue even though their own conduct falls within the "hard core" of the laws because "third party standing is appropriate when the challenged statute may chill constitutionally protected behavior."[1] *Seattle v. Ivan*, 71 Wn. App. 145, 150, 856 P.2d 1116 (1993) (citing *Tacoma v. Luvene*, 118 Wn.2d 826, 840, 827 P.2d 1374 (1992)).

1. Overbreadth — Alexander. Alexander argues that the term "to embarrass" is overbroad in violation of the First Amendment and Washington Constitution article 1, section 5.

Alexander contends that the Supreme Court in *Seattle v. Huff*, 111 Wn.2d 923, 767 P.2d 572 (1989) (*Huff* II) found that the term "embarrass" as used in RCW 9.61.230 was unconstitutionally overbroad. This misstates the court's holding in that the Supreme Court did not address whether that construction is constitutionally mandated.[2] Thus, we must consider the constitutional breadth of the term "embarrass".

 Overbreadth occurs when a law proscribes constitutionally protected free speech activities. In response to a facial challenge under the First Amendment, the court must first determine whether the overbreadth is both real and substantial in relation to the law's plainly legitimate sweep. *State v. Halstien*, 122 Wn.2d 109, 122-23, 857 P.2d 270 (1993) (citing *Luvene*, at 839-40 and *Seattle v. Éze*, 111 Wn.2d 22, 31, 759 P.2d 366, 78 A.L.R.4th 1115 (1988)). If a law covers a

---

[1] The City argues that Potter may not challenge the facial validity of the ordinance because that law does not implicate First Amendment activity. However, the telephone harassment laws regulate expressive conduct that implicates speech, although they do not regulate the content of speech, and Washington courts have evaluated these laws under the First Amendment. *See State v. Dyson*, 74 Wn. App. 237, 243-44, 872 P.2d 1115 (1994); *State v. Talley*, 122 Wn.2d 192, 202, 858 P.2d 217 (1993).

[2] Because the City in that case had agreed that "embarrass" should be stricken from the ordinance, the Supreme Court merely stated that it would "concur with [the City's] position even though we have doubts as to whether this construction is constitutionally mandated". *Huff* II, at 928.

substantial amount of protected speech in a nonpublic forum, that speech may be regulated if the law draws distinctions that are reasonable in light of the purpose served by the forum and if the law is viewpoint neutral. *Huff* II, at 926. Potter and Alexander do not dispute that the enactments in this case are viewpoint neutral. At issue is whether any overbreadth is real and substantial in relation to the plainly legitimate sweep of the legislation and, if so, whether the term "embarrass" draws distinctions that are reasonable in light of the purpose served by the forum, telephone communication.

Alexander argues under *Seattle v. Huff*, 51 Wn. App. 12, 751 P.2d 879 (1988) (*Huff* I) (without assessing Court of Appeals' analysis of "embarrass"), *aff'd*, 111 Wn.2d 923, 767 P.2d 572 (1989) that the proscription of specified calls, those which include certain language or conduct and are intended to embarrass, is too broad to constitute a reasonable restriction on free speech. In that case, the Court of Appeals considered the following subsection of the provision currently before this court.

> A. A person is guilty . . . if, with intent to harass, intimidate, torment or embarrass any other person, he makes a telephone call to such other person:
>
> . . . .
>
> (3) Threatening to inflict injury on the person or property of the person called or any member of his family[.]

*Huff* I, at 14 (quoting SMC 12A.06.100(A)(3)). The Court of Appeals found "embarrass" overbroad under a different analytical framework than the one utilized by the Supreme Court in *Huff* II. The Court of Appeals weighed the City's interests against the infringement on protected speech and found that the City could not demonstrate a compelling interest in criminalizing telephone calls that are merely intended to embarrass the listener. *Huff* I, at 16. The test, however, is not whether the State has a compelling interest in regulating the conduct. The correct test is whether a law, which encompasses a substantial amount of constitutionally protected conduct, draws distinctions that are reasonable in light of the purpose served by the forum. Further, the Court of Appeals

did not focus on the impact of the specific intent required by the telephone harassment law. Although the court's opinion in *Huff* I is instructive, we must reevaluate the constitutional sweep of the term "embarrass" as used in RCW 9.61.230 under the standard and framework announced by the Supreme Court in *Huff* II. We find that the statute survives this constitutional challenge.

In *Huff* II, the Supreme Court concluded that the portion of Seattle's telephone harassment ordinance proscribing threats "to inflict injury on the person or property of the person called" encompassed a substantial amount of constitutionally protected speech. The court held, however, that such proscriptions were constitutional because they were viewpoint neutral and reasonable in light of the purpose served by the forum. In concluding that the ordinance's restrictions were reasonable, the court specifically noted that the proscribed threats must be made with the requisite intent. *Huff* II, at 927. Several other decisions have rejected overbreadth challenges to statutes or ordinances because a specific intent requirement sufficiently narrowed the laws' proscriptions. *State v. Billups*, 62 Wn. App. 122, 128, 813 P.2d 149 (1991); *Seattle v. Webster*, 115 Wn.2d 635, 642, 802 P.2d 1333, 7 A.L.R.5th 1100 (1990), *cert. denied*, 500 U.S. 908 (1991); *Seattle v. Slack*, 113 Wn.2d 850, 855, 784 P.2d 494 (1989).

Because telephone communication occurs in a nonpublic forum, it receives substantially less protection than expression in a public forum. *See Huff* II, at 927. Telephone communication intrudes into normally private preserves such as the home, thereby invoking privacy considerations. In contrast to communication broadcast on the television and radio, which an unwilling recipient can choose to ignore, "[a] ringing telephone is an imperative which . . . must be obeyed with a prompt answer." *People v. Weeks*, 591 P.2d 91, 96 (Colo. 1979). *See also State v. Koetting*, 616 S.W.2d 822, 826-27 (Mo. 1981). Typically, the recipient of a telephone call does not know who is calling, and "[o]nce the telephone has been answered, the victim is at the mercy of the caller until the call can be terminated by hanging up." *Weeks*, at 96.

██ The Supreme Court has recognized that substantial privacy interests, which the State may recognize and protect, are involved when communication intrudes into the privacy of the home.

> The extent to which a state may regulate such expression is "dependent upon a showing that substantial privacy interests [of others] are being invaded in an essentially intolerable manner" . . . [T]he privacy interest of a listener in the privacy of his home will be accorded greater protection, along with the commensurate restrictions on unwanted discourse, than would be permitted in a public forum.

*People v. Taravella*, 133 Mich. App. 515, 519, 350 N.W.2d 780, 783 (1984) (quoting *Cohen v. California*, 403 U.S. 15, 21, 29 L. Ed. 2d 284, 91 S. Ct. 1780 (1971) and citing *Rowan v. United States Post Office Dep't*, 397 U.S. 728, 25 L. Ed. 2d 736, 90 S. Ct. 1484 (1970)). As this court has stated, the State has "a legitimate and substantial interest in protecting its residents from fear and abuse at the hands of persons who employ the telephone to torment others . . . and . . . from the intrusion of unwanted telephone calls". *Everett v. Moore*, 37 Wn. App. 862, 865, 683 P.2d 617 (1984). *See also State v. Dyson*, 74 Wn. App. 237, 244, 872 P.2d 1115 (1994).

██ In addition, the telephone harassment statute primarily regulates conduct, with minimal impact on speech. *Dyson*, at 243.

> The government has a strong and legitimate interest in preventing the harassment of individuals. The telephone, a device used primarily for communication, presents to some people a unique instrument through which to harass and abuse others. Because the telephone is normally used for communication does not preclude its use in a harassing course of conduct. . . .
>
> > Prohibiting harassment is not prohibiting speech, because harassment is not a protected speech. Harassment is not communication, although it may take the form of speech. The statute prohibits only telephone calls made with the intent to harass. Phone calls made with the intent to communicate are not prohibited. Harassment, in this case, thus is not protected merely because it is accomplished using a telephone.

*Dyson*, at 244 (quoting *Thorne v. Bailey*, 846 F.2d 241, 243 (4th Cir.), *cert. denied*, 488 U.S. 984 (1988)). The gravamen

of the offense is the thrusting of an offensive and unwanted communication upon one who is unable to ignore it.

Contrary to Alexander's assertions, *Everett v. Moore, supra*, does not support his contention that the statute is overbroad. In that case, this court held that an Everett harassment ordinance[3] was overbroad because it proscribed any written or telephonic communications "likely to cause annoyance or alarm". *Moore*, at 863. In holding the ordinance overbroad, this court noted that the proscription was not limited to telephone calls, intrusions into the home, or communications which abuse the listener in an intolerable manner. This court also noted that the words "annoyance" and "alarm" were so broad in scope that a large amount of innocuous speech would be proscribed. By contrast, the statute at issue here limits its scope to telephone calls, which occur in a nonpublic forum, and proscribes only speech that is intended to abuse the listener. The focus is on the caller and his or her intentions, not the effect the telephone call might have on the recipient. The statute is thus far narrower in scope than the ordinance in *Moore*.

■ The telephone provides a caller substantial access into the private space of the person called. In an effort to protect this privacy, the State penalizes callers who exploit that access by using profanity or anonymous calls with the intention of embarrassing another person. The telephone harassment laws[4] distinguish between these calls and other communication. In light of the privacy concerns invoked by communication over the telephone and the laws' emphasis on

---

[3]That ordinance, Everett Municipal Code 10.24.060(A), provided in pertinent part,

"A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he [or she]: . . .

"(3) Communicates with a person, anonymously or otherwise, by telephone, mail or other form of written communication, in a manner likely to cause annoyance or alarm; or

"(4) Engages in a course of conduct that alarms or seriously annoys another person and which serves no legitimate purpose." *Moore*, at 863.

[4]The Seattle ordinance contains the term "*to embarrass*" although that term was not included in the charging document or the jury instructions in Potter's case.

conduct instead of speech, we find this distinction reasonable. Thus, the term "to embarrass" included in the telephone harassment laws is not unconstitutionally overbroad.

██ Alexander also challenges the statute as a whole. He argues that the terms "profane", "degrading", "abusive", and "vulgar" are unconstitutionally overbroad. However, as noted above, the statute before us primarily regulates conduct, with minimal impact on speech. *See Dyson*, at 244 (discussing effect of statute on "indecent" speech). Further, the statutory provision under which Alexander was convicted receives minimal constitutional protection.

> [T]he level of constitutional protection given to "lewd, lascivious, profane, indecent, or obscene words or language" is minimal at best. It has long been recognized that certain classes of speech are not entitled to first amendment protection, including "the lewd and obscene, the profane, the libelous and the insulting or 'fighting' words — those which by their very utterance inflict injury or tend to incite an immediate breach of the peace."

(Footnote omitted.) *Dyson*, at 244 (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72, 86 L. Ed. 1031, 1035, 62 S. Ct. 766, 769 (1942)). Moreover, the specific intent requirement, which places the focus of the statute on the caller, sufficiently narrows the scope of the proscribed conduct. *See Seattle v. Huff*, 111 Wn.2d 923, 927, 767 P.2d 572 (1989) (*Huff* II); *Dyson*, at 245 n.5.

The court in *Dyson* noted cases in other jurisdictions that have upheld overbreadth challenges to telephone harassment statutes similar to RCW 9.61.230(1). *See Dyson*, at 245 (upholding statute that made it a misdemeanor to maliciously use a communications service " 'with intent to terrorize, frighten, intimidate, threaten, harass, molest or annoy any other . . . by [u]sing any vulgar, indecent, obscene or offensive language or suggesting any lewd or lascivious act in the course of a telephone conversation' " (quoting *Taravella*, at 518-22)); *State v. Hagen*, 27 Ariz. App. 722, 725, 558 P.2d 750, 753 (1976) (upholding statute making it unlawful to telephone another with "intent to terrify, intimidate, threaten, harass, annoy or offend" and use obscene, lewd, or

profane language); *In re Simmons*, 24 N.C. App. 28, 30, 210 S.E.2d 84 (1974) (upholding statute with no intent element that made it illegal to use words or language of a "profane, vulgar, lewd, lascivious or indecent character, nature or connotation" in a telephone conversation).

Thus, we find that the term "profane" is not unconstitutionally broad. We do not consider "degrading", "abusive", or "vulgar" because those terms do not appear on the face of the legislative enactments.

█ 2. Overbreadth — Potter. Potter argues that SMC 12A.06.100 is facially overbroad in its entirety because of the following terms: harass, intimidate, repeated, and extremely inconvenient hour. This argument fails. This court has recently held that "repeated" and "extremely inconvenient hour" are not unconstitutionally overbroad. *Dyson*, at 244-46. The Supreme Court in *Huff* II found that the terms "harass" and "intimidate" are not unconstitutionally overbroad.

█ 3. Vagueness — Potter and Alexander. We last consider whether the telephone harassment laws are unconstitutionally vague under the Fourteenth Amendment. In Washington, vagueness is tested under the federal due process test. *State v. Dyson*, 74 Wn. App. 237, 246, 872 P.2d 1115 (1994) (citing *State v. Talley*, 122 Wn.2d 192, 212, 858 P.2d 217 (1993)). Under the due process clause of the Fourteenth Amendment, citizens must be afforded fair warning of proscribed conduct. *Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990). To provide fair warning, a law must meet two requirements. First, legislated crimes must be defined with sufficient specificity to put citizens on notice concerning conduct they must avoid. Second, the law must provide ascertainable standards of guilt to protect against arbitrary law enforcement. *Douglass*, at 178; *Seattle v. Webster*, 115 Wn.2d 635, 642-43, 802 P.2d 1333, 7 A.L.R.5th 1100 (1990), *cert. denied*, 500 U.S. 908 (1991).

Under the first requirement, whether or not a legislative enactment specifically defines a crime is judged by the test of common intelligence, that is, whether persons of common

intelligence would have to guess at its meaning and differ as to its application. This does not demand impossible standards of specificity or absolute agreement. *Douglass*, at 179. A statute is constitutional if the statute makes plain the general area of conduct against which it is directed. *Huff* II, at 929. To be found unconstitutional, the terms must be so "loose and obscure that they cannot be clearly applied in any context'." *Douglass*, at 182 n.7 (quoting *Basiardanes v. Galveston*, 682 F.2d 1203, 1210 (5th Cir. 1982)). Under the second requirement, a challenger must show that an enactment invites an inordinate amount of police discretion. *Douglass*, at 181; *State v. Maciolek*, 101 Wn.2d 259, 267, 676 P.2d 996 (1984).

Potter and Alexander offer identical arguments, *i.e.*, that the terms "anonymously", "repeatedly", and "extremely inconvenient hour" are unconstitutionally vague because they fail to satisfy these due process requirements. The City and the State contend that the prohibitions are clear to persons of common intelligence and that the intent elements of the statute and ordinance save the laws from being void for vagueness. Because legislative enactments enjoy a presumption of constitutionality, Potter and Alexander must show that the enactments are unconstitutional beyond a reasonable doubt. *See Douglass*, at 177 (citing *Seattle v. Eze*, 111 Wn.2d 22, 26, 759 P.2d 366, 78 A.L.R.4th 1115 (1988)). Potter and Alexander have failed to make such a showing.

This court recently held that the term "extremely inconvenient hour" is not unconstitutionally vague because it provides both adequate notice and adequate standards to prevent arbitrary enforcement. *Dyson*, at 247-48.

Potter and Alexander contend that reasonable persons may differ as to the meaning of the term "anonymously" as it relates to a telephone call. We disagree. Courts usually scrutinize allegedly vague statutory language in the context of the entire statute and in light of common understanding, dictionary definitions, and common sense. *See, e.g., Douglass*, at 180; *Huff* II, at 929. "Anonymous" is defined as "with no name known or acknowledged" and "given, written, etc.

by a person whose name is withheld or unknown". *Webster's New World Dictionary* 29 (2d ed. 1975). In the context of the telephone harassment laws, "anonymous", according to this definition and common sense, refers to whether or not the caller identifies himself and to whether or not the other person recognizes the caller's voice. Ordinary persons will not differ in application or have to guess at definition. In addition, Potter and Alexander fail to demonstrate how "anonymously" provides inadequate standards to law enforcement.

The definition of "repeatedly" is similarly clear to persons of common intelligence. *Webster's* defines "repeated" as "said, made, or done again, or again and again". *Webster's New World Dictionary* 633 (2d ed. 1975). This definition and common usage of the word imply more than one action or event. *Cf. Spokane v. Fischer*, 110 Wn.2d 541, 545, 754 P.2d 1241 (1988) ("frequent or habitual" understood by persons of common intelligence). Potter and Alexander offer no authority for the proposition that a law must provide a specific timeframe in which repeated events must occur. Moreover, "repeatedly" does not invite subjective evaluation by law enforcement. *Cf. Tacoma v. Luvene*, 118 Wn.2d 826, 846-48, 827 P.2d 1374 (1992).

In addition, our Supreme Court in *Seattle v. Webster*, 115 Wn.2d 635, 802 P.2d 1333, 7 A.L.R.5th 1100 (1990), *cert. denied*, 500 U.S. 908 (1991) stated, in holding that a pedestrian interference ordinance was not vague because it included an intent element:

> Petitioner City of Seattle contends that the ordinance is not unconstitutionally vague inasmuch as it includes an element of specific intent. The requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid.
>
> SMC 12A.12.015(B)(1) includes an element of specific intent. The ordinance does not, as respondent and *amicus* claim, base criminality on the reaction of others to the presence of a person on the public sidewalks. Rather, it defines the proscribed conduct solely in reference to the person interfering with the flow of pedestrian or vehicular traffic. The question can be asked: Did that person stand, sit, walk, or place an

object *with the intent* to cause another person or a driver of a vehicle to take evasive action? If the answer is "yes," then the person may be properly charged under the ordinance.

(Footnotes omitted.) *Webster*, at 644. *See also Screws v. United States*, 325 U.S. 91, 101-02, 89 L. Ed. 2d 1495, 65 S. Ct. 1031, 162 A.L.R. 1330 (1945); *State v. Stark*, 66 Wn. App. 423, 434, 832 P.2d 109 (1992) (when statute requires specific criminal intent, "remaining terms are less vague or indefinite than they might otherwise be considered"); *People v. McBurney*, 750 P.2d 916 (Colo. 1988) (telephone harassment statute not vague because it included element of intent to "harass, annoy, or alarm"). Here, too, the statute and ordinance define criminality solely with reference to the defendant and his or her intent to "intimidate, harass, torment, or embarrass" another in connection with certain conduct.

For the reasons stated, we find that the terms "anonymously" and "repeatedly" as used in the telephone harassment laws provide adequate notice to persons of common intelligence as to what behavior is prohibited and as to the specific intent required. In addition, the laws provide sufficient guidelines to prevent arbitrary enforcement by police officers and the courts. Thus, we find SMC 12A.06.100(A)(2) and RCW 9.61.230(2) are not unconstitutionally vague.

We affirm.

AGID, J., concurs.

BAKER, A.C.J. (concurring) — I concur, but write separately to express reservations concerning the word "profane" as used in RCW 9.61.230(2).

Alexander challenges the term "profane" as unconstitutionally overbroad. The trial court defined that term for the jury by an instruction that "[p]rofane language is that language which is degrading, abusive or vulgar". As so defined, I agree that the term "profane" is not unconstitutionally overbroad. "Profane" has another, common connotation, however. It is frequently used to describe language "[m]anifesting irreverence or disrespect toward the Deity or sacred

things". *Funk & Wagnalls Standard Desk Dictionary* (1966); *see also Webster's Third New International Dictionary* 1810 (1986).

An effort by the State to criminalize the use of language showing a "disrespect toward the Deity", even in a nonpublic forum, would not be constitutional for more reasons than overbreadth. Such a law would also violate constitutional prohibitions against aiding the establishment of religion.

Because the "antireligious" connotation of the term "profane" is so common, it is necessary to limit the meaning of the word in a manner similar to the court's instruction below. I would require such a limiting definition of the word "profane" as a condition of our ruling upholding RCW 9.61.230(2).

Review denied at 127 Wn.2d 1001 (1995).