IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| TERRY E. JAMES,<br><br>    Respondent,<br><br>  v.<br><br>K.L.,<br><br>    Appellant. | No. 79687-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: February 24, 2020 |

SMITH, J. — A middle school student sent a story he wrote to several fellow students who were specifically identified and featured in the story which contained threats, violence, and sexual innuendo. The trial court issued a one-year antiharassment protection order against K.L., the student who sent the story. K.L. appeals, arguing that (1) the record and the court's findings do not support the order, (2) the court failed to consider certain factors set forth in RCW 10.14.040(7), (3) the protection order was impermissibly based on protected free speech, and (4) the provisions of the order are overly broad. We affirm.

## FACTS

On January 8, 2019, the father of 12-year-old M.J. petitioned for a protection order on her behalf. He alleged that a month earlier, another seventh

grade student, K.L., emailed a story he wrote to M.J. and four other classmates.[1] M.J. did not read the story or forward the message to her parents. Her father was told it was "disturbing" and that one aspect of the plot involved a specific threat to shoot and kill M.J.

Once alerted about the incident, school officials contacted law enforcement, temporarily suspended K.L., and conducted a risk assessment in accordance with school district policy. The school determined that K.L. would be allowed to return to school after the winter break, but changed K.L.'s schedule so he would not have classes with the students identified in the story and made arrangements so that staff could supervise him during the lunch period. Before the end of the school break, although K.L. had been instructed by the school principal not to contact any of the students to whom he sent the story, K.L. sent M.J. a message via social media asking to talk to her. M.J.'s family requested that a school staff member chaperone K.L. during passing periods and lunch. The school indicated that it would be unable to accommodate the request due to inadequate staffing. M.J.'s father stated that his daughter was afraid for her safety and fearful of seeing K.L. or potentially having to interact with him. He asked the court to prohibit K.L. from attending his daughter's school.

On January 9, the day after M.J.'s father filed the petition, the court entered a temporary protection order. The court's order prohibited all direct, indirect, and electronic contact between K.L. and M.J. The court also ordered

---

[1] The record refers to the appellant by a nickname comprised of different initials.

2

that K.L. remain at least 100 feet from M.J. at school, unless escorted. The court set the next hearing for January 22, 2019. On that date, M.J.'s father expressed concerns because on three occasions after the court issued the temporary order, K.L. was in "close proximity" to M.J., without an escort. The court reissued the temporary order and altered the terms. In addition to the distance provision, the court's order required K.L. to be escorted by school personnel, or school designated personnel, at all times. The court set the next hearing for February 5, 2019.[2]

At the time of the hearing, K.L. and M.J. were still attending the same school, although there had been previous discussions between the families about K.L. transferring to a different school.[3] During the hearing, the court heard M.J.'s father's testimony and took a recess to read the story K.L. sent to M.J. and her classmates.

The court determined that K.L.'s conduct constituted unlawful harassment and entered a one-year protection order in accordance with the terms of the temporary order issued on January 22, 2019. The court later denied K.L.'s motion to modify the order. K.L. appeals.[4]

---

[2] The court also ordered the appointment of a guardian ad litem (GAL) on January 22. Although no GAL was appointed, attorneys employed by TeamChild, a legal services provider for youth, subsequently appeared as counsel for K.L.

[3] The record indicates that K.L. subsequently transferred to a different school.

[4] M.J.'s father, the petitioner below, has not filed a brief in response to K.L.'s appeal.

ANALYSIS

Chapter 10.14 RCW grants trial courts in civil antiharassment proceedings "broad discretion to grant such relief as the court deems proper." RCW 10.14.080(6). At a hearing for an antiharassment protection order, "if the court finds by a preponderance of the evidence that unlawful harassment exists, a civil antiharassment protection order shall issue prohibiting such unlawful harassment." RCW 10.14.080(3).

The determination of whether unlawful harassment exists, warranting an order of protection, is largely controlled by statute. The statute defines "unlawful harassment" to mean a "knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose." RCW 10.14.020(2). A course of conduct is a "pattern of conduct" and must be of a nature that "would cause a reasonable person to suffer substantial emotional distress, and shall actually cause substantial emotional distress to the petitioner." RCW 10.14.020(1)-(2).

As occurred in this case, a parent or guardian may petition for a protection order for a child. RCW 10.14.040(7). If both minors attend the same school, the trial court may order the restrained party to attend a different school at his or her family's expense. RCW 10.14.040(7). In restraining a minor, the trial court must consider a number of factors: (1) "the severity of the alleged offense," (2) "any continuing physical danger or emotional distress to the alleged victim," and (3)

4

"the expense, difficulty, and educational disruption that would be caused by a transfer of the alleged offender to another school." RCW 10.14.040(7).

Well-settled principles of law govern our review of K.L.'s appeal. This court reviews the issuance of a harassment protection order for abuse of discretion. Trummel v. Mitchell, 156 Wn.2d 653, 668-69, 131 P.3d 305 (2006); In re Vulnerable Adult Petition for Knight, 178 Wn. App. 929, 936, 317 P.3d 1068 (2014). A court abuses its discretion when it exercises such discretion on untenable grounds or for untenable reasons. State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

The court's findings are reviewed for substantial evidence. Knight, 178 Wn. App. at 936. "Substantial evidence" exists if the evidence is sufficient to persuade a fair-minded rational person of the truth of the evidence. In re Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). Appellate courts do not find facts and cannot substitute their view of the facts in the record for those of the trial judge. Thorndike v. Hesperian Orchards, Inc., 54 Wn.2d 570, 575, 343 P.2d 183 (1959).

K.L. contends that neither the record nor the court's findings support the protection order. In particular, K.L. argues that the court failed to make a required "threshold finding" under RCW 10.14.040(7) that he had been adjudicated or investigated for an offense against M.J. And since the petition merely refers to a city of Redmond police report but does not attach the report, he claims that the evidence would not support such a finding.

But as explained, RCW 10.14.080(3) provides that the court shall issue a protection order upon finding, by a preponderance of the evidence, the existence of unlawful harassment. The protection order herein includes a finding that "respondent committed unlawful harassment, as defined in RCW 10.14.080, and was not acting pursuant to any statutory authority." No authority supports K.L.'s argument that this finding is insufficient because it is stated in "boilerplate form language." See Spence v. Kaminski, 103 Wn. App. 325, 332, 12 P.3d 1030 (2000) (rejecting claim that "preprinted findings on a form are insufficient to indicate the factual basis for the court's conclusions" supporting protection order under chapter 26.50 RCW). And to the extent K.L. now challenges the sufficiency of the petition under RCW 10.14.040(7) on the basis that it does not fully explain the nature of the police investigation conducted, he failed to object, request further information, or otherwise raise the issue below. Any claim of error is therefore waived. See RAP 2.5(a) (This court generally declines to consider arguments raised for the first time on appeal.).

K.L. also suggests that the trial court erred by failing to make clear findings specifying his course of conduct. He claims that the evidence is insufficient to support a finding that his actions amount to a course of conduct constituting harassment. The statute defines "course of conduct" as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." RCW 10.14.020(1).

The oral ruling reflects that the trial court considered and found all the statutory elements, including a course of conduct. K.L. engaged in more than

6

one act when he sent a story to multiple individuals. It is reasonable to infer that his actions were largely directed at M.J. She is the only person identified in the story by her full name, and as the trial court noted, the threats and innuendo were directed specifically at her. The definition of course of conduct is broad enough to include communications to third parties where the harassment is "directed at" the alleged victim. See State v. Becklin, 163 Wn.2d 519, 527-28, 182 P.3d 944 (2008) (stalking and harassment statutes broad enough to encompass act of directing third parties to harass the victim). There was also evidence that some weeks later, K.L. contacted M.J. directly, after he was specifically instructed not to do so. Based on the record, the trial court did not abuse its discretion in concluding that K.L. engaged in a course of conduct, or a series of acts, "directed at" M.J. that evidenced a "continuity of purpose" to harass her. See RCW 10.14.020(1)-(2).

K.L. next claims that the court abused its discretion when it refused to consider evidence of educational disruption under RCW 10.14.040(7). After the court ruled that the petitioner established unlawful harassment, K.L.'s counsel asked that the court delay entry of the order to allow counsel to provide information to the court about the school's safety plan in light of the order. Counsel argued that the provisions of the order had a significant impact on K.L.'s access to education and therefore under RCW 10.14.040(7), the court was required to consider such evidence. The court denied the request, observing that the statute expressly provides that the court must consider the "expense, difficulty, and educational disruption" of the restrained minor only when it orders

7

"a transfer of the alleged offender to another school." RCW 10.14.040(7). Although it had the authority to do so, the court did not order K.L. to transfer schools. And despite the arguments of counsel, there was no evidence before the court to substantiate the claim that the provisions of the order had the practical effect of requiring a transfer. The court's decision denying the request to postpone entry of the order and to allow the presentation of additional evidence was tenable.[5]

The record reflects the court's consideration of the other relevant factors under RCW 10.14.040(7), including the "severity of the alleged offense," and whether there was "continuing physical danger or emotional distress to the alleged victim." K.L. correctly points out that the legislature did not intend for protection orders to issue under circumstances that amount to "'schoolyard scuffles.'" See LAWS OF 2001, ch. 260, § 1. But the record in this case does not support his characterization of the evidence as an innocuous "schoolyard situation." And there is nothing to suggest that the court imposed the order because the respondent's attempts to make connections were "socially awkward" or because the alleged victim felt "'weird.'"

---

[5] No authority supports K.L.'s position that the court deprived him of his right to due process by denying his request to delay entry of the protection order to allow additional evidence. See Goss v. Lopez, 419 U.S. 565, 574, 581, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975) (10-day suspension required, at minimum, some form of notice and opportunity for a hearing). Again, the protection order did not exclude K.L. from attending school or otherwise disrupt his education without notice and a hearing. And as explained, the court was not required to consider educational disruption caused by a school transfer when it did not order a transfer. See RCW 10.14.040(7).

K.L. further argues that the antiharassment protection order was largely based on the content of his fictional story and as such, it was impermissibly based on his constitutionally protected speech. RCW 10.14.020(1) provides that "[c]onstitutionally protected activity is not included within the meaning of 'course of conduct.'" RCW 10.14.190 likewise provides that the antiharassment statute shall not be used "to infringe upon any constitutionally protected rights including, but not limited to, freedom of speech and freedom of assembly."

The civil antiharassment statute does not criminalize language. The purpose of chapter 10.14 RCW is "to provide victims with a speedy and inexpensive method of obtaining civil antiharassment protection orders preventing all further unwanted contact between the victim and the perpetrator." RCW 10.14.010. And while it may involve speech, conduct that amounts to harassment is not constitutionally protected. State v. Alexander, 76 Wn. App. 830, 837-38, 888 P.2d 175 (1995) (The "gravamen of [harassment] is the thrusting of offensive and unwanted communication."); In re Marriage of Meredith, 148 Wn. App. 887, 899, 201 P.3d 1056 (2009). K.L.'s reliance on cases addressing criminal convictions premised on speech is misplaced. See State v. Kohonen, 192 Wn. App. 567, 360 P.3d 16 (2016); State v. Locke, 175 Wn. App. 779, 307 P.3d 771 (2013). And true threat analysis, which helps to define the scope and limits of criminal statutes that regulate speech, does not

apply in this context. See State v. Allen, 176 Wn.2d 611, 626, 294 P.3d 679 (2013).[6]

K.L. next argues that the facts of the case do not warrant the particular restrictions set forth in the protection order. Because the allegations in the petition involved unwanted communication by electronic means, he claims there was no basis to impose restrictions designed to prevent physical contact. But the petitioner testified in his declaration that M.J. feared K.L.'s retaliation and that the prospect of direct contact with him at school caused M.J. substantial anxiety and "a great deal of fear and stress." The evidence supports the restrictions on physical contact.

Finally, K.L. claims the protection order is overbroad because it imposes restrictions on the school, a nonparty to the proceeding. However, as explained, the court had authority to order K.L. to transfer to a different school. See RCW 10.14.040(7). The court imposed a less restrictive order, outlining conditions under which both minors could attend the same school. The court's

---

[6] Although K.L.'s writing was at the center of the claims underlying the protection order, his conduct involved purely private communication, in contrast to other constitutionally protected speech-related activities that broadly implicate the public interest. See N.Y. Times Co. v. Sullivan, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964) (publishing); Watts v. United States, 394 U.S. 705, 89 S. Ct. 1399, 22 L. Ed. 2d 664 (1969) (speaking at political events); United States v. Grace, 461 U.S. 171, 103 S. Ct. 1702, 75 L. Ed. 2d 736 (1983) (leafleting); Richmond v. Thompson, 130 Wn.2d 368, 922 P.2d 1343 (1996) (complaining to government agencies); City of Seattle v. Megrey, 93 Wn. App. 391, 968 P.2d 900 (1998) (accessing courts). "[W]here matters of purely private significance are at issue, First Amendment protections are often less rigorous" because "restricting speech on purely private matters does not implicate the same constitutional concerns as limiting speech on matters of public interest." Snyder v. Phelps, 562 U.S. 443, 452, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011).

order does not in fact impose legal obligations directly on the school and, unlike the case in <u>Trummel</u>, does not grant relief in favor of people or entities that were not parties to the proceeding. <u>See</u> <u>Trummel</u>, 156 Wn.2d at 668-70.

The evidence was sufficient for the court to find, by a preponderance of the evidence, that K.L. engaged in unlawful harassment, and we conclude that the superior court's ruling was not manifestly unreasonable.

Affirmed.

_____
Smith, J.

WE CONCUR:

_____    _____
    ,J    Andrus, J.