# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MAKENZIE ELIZABETH HERTENSTEIN, | No. 60003-0-II |
| Respondent, | |
| v. | |
| ELIZABET STARLING, | UNPUBLISHED OPINION |
| Petitioner. | |

GLASGOW, J.—Makenzie Hertenstein started dating Elizabet Starling's ex-boyfriend. Over the course of several months, Starling sent Hertenstein a series of insulting messages over social media. Hertenstein asked Starling to stop contacting her and attempted to block Starling on social media websites, but Starling continued to message Hertenstein, as well as her friends and coworkers, through different fake accounts.

A district court commissioner issued an anti-harassment protection order prohibiting Starling from contacting or coming near Hertenstein. Starling appealed this order to the superior court, and the superior court affirmed the district court's order. Starling seeks to appeal the superior court's decision, arguing the anti-harassment protection order was not supported by sufficient evidence and that it violated her right to free speech, among other arguments.

Because the district court is a court of limited jurisdiction, when the superior court reviews a district court decision, it satisfies the losing party's right to an appeal. Under these circumstances, we will only accept review of the superior court's decision if it meets the standards for discretionary review in RAP 2.3(d). As a result, we convert Startling's notice of appeal to a notice

of discretionary review. Here, Starling has not demonstrated that this case satisfies any of the means under RAP 2.3(d) for obtaining review, so we deny discretionary review.

FACTS

In December 2023, Hertenstein filed a petition for an anti-harassment protection order against Starling. Starling had a prior dating relationship with Austin Smogar, who later dated Hertenstein.

Hertenstein alleged that Starling was harassing and stalking her. She asked the district court to prohibit Starling from contacting or coming within 1,000 feet of Hertenstein, her home, and her workplace. Hertenstein stated that earlier that month, Starling contacted her several times through social media, and the messages "included aggressive terms, slander, and false information regarding the situation." Clerk's Papers (CP) at 12. Hertenstein wrote that Starling had also used different accounts to contact her many times in the prior six months with similar messages and had recently started contacting Hertenstein's friends and coworkers. Hertenstein stated that though she blocked Starling's accounts on social media platforms, Starling would continue to contact her using alternate or fake accounts. Hertenstein attached screenshots of many of Starling's messages to her petition.

Starling's messages contained angry reactions to Hertenstein's relationship with Smogar. The messages often included insults, expletives, and obscene and vulgar language. Hertenstein wrote in her petition that as a result of these messages, she felt "exposed, humiliated, and embarrassed." CP at 13. Hertenstein also said that Starling's "continuous contact" gave her night terrors and insomnia, and she was "fearful to be out in public" or in her home. CP at 15. On multiple occasions, Hertenstein asked Starling to stop contacting her. Hertenstein went to the

2

police regarding Starling's conduct. An officer recommended that she get a protection order and concluded police had probable cause to arrest Starling for cyber harassment.

At a hearing, the district court reviewed the anti-harassment protection order petition and the messages Hertenstein provided. Hertenstein testified that as far as she knew, the messages were from Starling. Two of Hertenstein's friends also confirmed that they received some of the messages included in the petition from Starling. Starling did not deny sending the messages; she instead argued that her messages constituted protected free speech because she never directly threatened Hertenstein.

The district court granted Hertenstein a two-year anti-harassment protection order against Starling. The district court entered a form order finding by a preponderance of the evidence that Starling had subjected Hertenstein to unlawful harassment under ch. 7.105 RCW.

Starling appealed the protection order to the superior court. Starling again contended that her messages were protected free speech under the First Amendment to the United States Constitution because "there was no indication of a threat of violence, nor were any threats explicitly made." CP at 112. Starling also stated that Hertenstein failed to provide factual evidence that Starling's messages caused Hertenstein emotional distress, and Hertenstein's demeanor during the hearing did not reflect fear. Additionally, Starling contended that she saw Hertenstein conversing with and receiving paperwork from an unknown person during the virtual hearing, which Starling argued constituted impermissible outside assistance. Hertenstein responded to Starling's appeal and included additional messages from Starling.

The superior court affirmed the anti-harassment protection order against Starling. After reviewing the record, the superior court concluded that "Hertenstein produced unwanted

3

communications from Elizabet Starling demonstrating a pattern of behavior. She also demonstrated that Elizabet Starling's unwanted contact resulted in substantial emotional distress." CP at 369. Starling seeks to appeal the superior court's decision.

ANALYSIS

## I. STANDARD FOR DISCRETIONARY REVIEW

Starling attempts to appeal the superior court's decision affirming the protection order. However, in this case, the superior court reviewed a decision from a district court commissioner. Because the district court is a court of limited jurisdiction, "[a] superior court decision entered upon the review of a decision of the district court is not appealable." *Lowery v. Nelson*, 43 Wn. App. 747, 749, 719 P.2d 594 (1986) (citing RAP 2.2(c)). A notice of appeal that is not appealable will be treated as a notice of discretionary review. RAP 5.1(c). Thus, we convert Starling's notice of appeal to a notice of discretionary review. *Id.*

Under RAP 2.3(d), we accept discretionary review of a superior court's decision reviewing a decision from a court of limited jurisdiction only if the superior court's decision (1) conflicts with a Washington Court of Appeals or Supreme Court decision, (2) involves a significant question of constitutional law, (3) involves an issue of public interest, or (4) departs "so far" from the "accepted and usual course of judicial proceedings" that appellate review is required. *Accord Eide v. Dep't of Licensing*, 101 Wn. App. 218, 222, 3 P.3d 208 (2000).

## II. APPLICATION OF DISCRETIONARY REVIEW STANDARD TO STARLING'S CLAIMS

In Washington, "unlawful harassment" justifying an anti-harassment protection order includes a "knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, harasses, or is detrimental to such person, and that serves no legitimate or lawful

purpose." RCW 7.105.010(37)(a). A harassing "course of conduct" can include "any form of communication, contact, or conduct, including the sending of an electronic communication, but does not include constitutionally protected free speech." RCW 7.105.010(7)(a); *see also* RCW 7.105.310(3) (stating that when granting a civil anti-harassment protection order, the court "shall not prohibit the respondent from exercising constitutionally protected free speech"). The course of conduct "must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." RCW 7.105.010(37)(a).

A.      Evidence of Harassment

Starling first argues that the anti-harassment protection order against her was not supported by substantial evidence of threats or intent to harass, which is required under RCW 9A.46.020. However, RCW 9A.46.020 provides the criminal definition of harassment. For civil protection orders, the definition of unlawful harassment is outlined in RCW 7.105.010(37). Starling has pointed to no case applying the criminal definition of harassment in a civil protection order context. Accordingly, no Washington Court of Appeals or Supreme Court decision conflicts with the superior court's application of RCW 7.105 rather than RCW 9A.46.020.

Starling additionally argues that Hertenstein did not provide sufficient evidence of substantial emotional distress, which is a required element of harassment under RCW 7.105.010(37). Starling claims that Hertenstein was required to produce medical documentation or other corroborating evidence of emotional distress. However, Starling does not cite any legal authorities stating that Hertenstein was required to produce corroborating medical evidence of her

emotional distress in order to obtain a protection order. Thus, the superior court's order does not conflict with established Washington case law on this issue.[1]

Finally, Starling contends that the superior court erred by relying on the messages provided by Hertenstein because Hertenstein "failed to provide undeniable proof" that Starling sent the messages. Appellant's Opening Br. at 14. With limited exceptions, the standard rules of evidence do not apply in protection order proceedings. ER 1101(c)(4); RCW 7.105.200(8). Under RCW 7.105.200(5), protection order hearings "may be conducted upon the information provided in the sworn petition, live testimony of the parties should they choose to testify, and any additional sworn declarations." Accordingly, evidence in a protection order hearing "may contain hearsay or be wholly documentary." *Blackmon v. Blackmon*, 155 Wn. App. 715, 722, 230 P.3d 233 (2010). Here, Hertenstein submitted documentary evidence of messages in her sworn petition and testified at the hearing, along with her two friends, why they believed that these messages were from Starling. Starling did not deny to the district or superior court that she sent the messages. Thus, the superior court's consideration of Hertenstein's evidence does not conflict with established Washington case law.

Discretionary review is not warranted based on any of these arguments.

B.     First Amendment

To the extent that Starling otherwise argues the superior court violated her First Amendment rights by imposing civil restrictions on her free speech, we also decline to accept discretionary review. Protection orders based solely on protected free speech are invalid. *Catlett*

---

[1] Starling also challenges several of the superior court's credibility findings. However, Starling's arguments do not establish any basis for review of these findings under RAP 2.3(d).

*v. Teel*, 15 Wn. App. 2d 689, 699, 477 P.3d 50 (2020). However, "'it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.'" *Cox v. Louisiana*, 379 U.S. 559, 563, 85 S. Ct. 476, 13 L. Ed. 2d 487 (1965) (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502, 69 S. Ct. 684, 93 L. Ed. 834 (1949)). Washington courts have held that protection orders based on harassing conduct, even if that conduct included speech, do not violate free speech rights. *See Trummel v. Mitchell*, 156 Wn.2d 653, 668, 131 P.3d 305 (2006) (holding that trial court did not violate Trummel's First Amendment rights by imposing a protection order based on placement of newsletters on neighbors' doors and other hostile behaviors because it focused on the "the speaker's conduct and not the message"); *State v. Noah*, 103 Wn. App. 29, 38-39, 9 P.3d 858 (2000) (affirming a protection order based on Noah's conduct, including calling the protected party and his landlord and entering the protected party's office to talk with his clients without permission).

Here, the superior court's order focused solely on Starling's conduct, not the content of her speech. After review of the record, the superior court concluded that the evidence showed "unwanted communications" from Starling to Hertenstein "demonstrating a pattern of behavior," and that this "unwanted contact" resulted in substantial emotional distress for Hertenstein. CP at 369. Hertenstein both attempted to block Starling's accounts and told Starling to stop contacting her, but Starling persistently continued to send Hertenstein—and her coworkers and friends— electronic communications through other social media websites and fake accounts. Thus, while Starling argues this is an issue involving her constitutional First Amendment rights, this case does not present a significant question of constitutional law, nor does the superior court's decision

conflict with established Washington case law, nor does it depart "so far" from the "accepted and usual course of judicial proceedings" that appellate review is required. RAP 2.3(d)(4).

Starling also cites *Counterman v. Colorado*, 600 U.S. 66, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023), to argue that the superior court erred by entering a civil anti-harassment protection order without substantial evidence that Starling made a "true threat" against Hertenstein or that Starling intended to harass Hertenstein. However, the superior court's decision focused on Starling's conduct, not the content of her speech. Neither the district court nor the superior court needed to find Starling's speech constituted a true threat in order to find conduct-based harassment. *See State v. Alexander*, 76 Wn. App. 830, 837-38, 888 P.2d 175 (1995) (The "gravamen of the [harassment] is the thrusting of an offensive and unwanted communication upon one who is unable to ignore it"). Additionally, civil anti-harassment protection orders are not the type of proceeding to which Washington courts have extended the true threat analysis. *Cf. In re Det. of Danforth*, 173 Wn.2d 59, 77, 264 P.3d 783 (2011) (Chambers, J., concurring in part and dissenting in part); 88 (Wiggins, J., dissenting) (six justices agreeing in the concurrence and dissent that true threat analysis is required for the "recent overt act" component of a sexually violent predator commitment). Thus, the superior court's decision does not conflict with established Washington case law on this issue.

C.    Other Arguments

Starling also argues here, and argued to the superior court below, that the protection order hearing at the district court was unfair and biased for several reasons. Specifically, Starling argues that the videoconference district court hearing was unfair because she observed Hertenstein "conversing with someone else in the room while on mute, and receiving paperwork," which

indicated potential outside assistance. CP at 120. Starling also contends that the virtual hearing was unfair because her audio was inaudible at certain moments. However, Starling does not cite to any legal authorities for this claim. Nor does she assert that the hearing violated her constitutional rights. After a careful review of the record, we conclude that the superior court's decision affirming the district court commissioner's protection order does not depart "so far" from the "accepted and usual course of judicial proceedings" that appellate review is required. RAP 2.3(d)(4); *see Eide*, 101 Wn. App. at 222.

Finally, Starling argues that the superior court's decision affirming the district court's denial of her petition for a protection order against Smogar was not supported by substantial evidence and demonstrates judicial bias against her. However, that order is the subject of an entirely separate appeal. To the extent Starling contends that the disparate outcomes in this proceeding and the proceeding where she sought a protection order against Smogar show judicial bias against her, Starling has not presented sufficient evidence on this record for us to grant review on that basis.

CONCLUSION

We hold that Starling has not satisfied the standards for discretionary review under RAP 2.3(d). Starling's arguments do not conflict with Washington case law or involve significant questions of constitutional law, and the superior court did not depart from the "accepted and usual course of judicial proceedings" by affirming the district court commissioner's protection order against Starling. RAP 2.3(d)(4). Additionally, Starling's appeal does not involve an issue of public interest, as this protection order was fact-specific and only affected the parties involved. Accordingly, we decline to accept discretionary review.

No. 60003-0-II

We convert the notice of appeal to a notice of discretionary review, and we deny discretionary review.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

LEE, P.J.

CHE, J.