# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77604-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| THANH PHAM NGUYEN, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: October 21, 2019 |
| | ) | |

MANN, A.C.J. — Thanh Nguyen appeals his conviction for two counts of felony violation of a court order and felony stalking. Nguyen contends that his stalking conviction abridges his freedom of speech, that the trial court erred by denying his motion to sever the offenses, not accepting his request to stipulate to predicate convictions, allowing testimony about a residential burglary conviction, and not redacting the warning provisions on the no-contact orders. Nguyen also challenges the imposition of a $100 deoxyribonucleic acid (DNA) collection fee.

We remand to strike the $100 DNA fee and affirm on all other grounds.

I.

Shortly after Lisa Stinson and Nguyen began dating in 2013, Nguyen began abusing Stinson. Stinson became pregnant and their child K.N. was born in October 2015. After several incidents of domestic violence, the court issued no-contact orders in 2016.

In November 2016, Nguyen was convicted of residential burglary related to kicking in the front door of Stinson's house and the court issued new no-contact orders protecting Stinson and K.N.

On December 17, 2016, Nguyen threatened to come to Stinson's house saying "I need a fucking answer dude," "your playing with me," "im coming over," and "right now!! on the way." Shortly after receiving these text messages, Stinson heard a knock at the door, followed by another text message saying "come out." Stinson called 911 to report Nguyen. K.N. was in the house when Stinson heard the knock on the door.

Between December 17 to 25, 2016, Nguyen continued to send text messages to Stinson. On December 24th, Nguyen sent 24 text messages to Stinson containing the following message:

> i know u don't give a fuck about me . . . and i dont give a fuck about u . . . but were a partner in rasing our daughter cause u think u could do it on your own and u probably can but you cant give her what I can give her a man in her life thats gonna keep her solid keep her from choosing men like me thats gonna Do what ive done to u cause your her example and u keep bringing your past into your life and i cant accept my daughter to follow in your footsteps regarding men
>
> one day all this shit is gonna register and your gonna hate yourself for it cause you allowed it to happen . . . im done trying to reason with u cause i know u dont give a fuck about nobody but yourself and that is why you might heal but youll never prosper and find somebody thats gonna love you life is too short to get even life is short to try to prove something to somebody that u want nothing to do with cause at the end of the day you gotta answer to your kids when they start asking about their daddys what

2

will u say???? thst they hurt u?? so u took it upon yourself to exclude us from their lives???? ill prey for u cause atleast outta the two of us i see right through your bullshit and i wish i could have more 9f an impact on you! your a great mom but your a horrible person atleast u doing your best and u providing and i know they'll be better off!! but mentally how will the be???????????

im gonna sign my parental rights over to u!!! im court!! shit if u get the papers together ill sign my rights asap!!! i will have no right to even ask about her like u want?? so lets get it in writing You can have her u wanna move on you want to start over u wanna be free!?? get me those papers and ill sign them cause that's the only way ill leave u alone

THATS MY DAUGTHER AND U CANT CHANGE THAT EVEN IF U WANTED TO she'll be 15 months and ive only known her for 3 so she might as well not even see mr cause she would be soooo hurt if she knew what u was doing to her daddy and I rather her not know me than to know that i didnt fight for her cause im not anymore im so tired of u using her for revenge you turned out to be the person you said youoo never be and ive been consisted this entire time!!! so who really kept it 100?? who really was about their word??? who really was the ride or die????

On December 25th, Nguyen sent 10 text messages to Stinson containing the following message:

Merry xmas . . . Please find it in yourself to keep me out of jail . . . allow me to provide u financially through sending u money i cant repay you for your door and window in jail i cant pay u child support in jail. . . i want to help u . . .Today i woke up with a better understanding of why your like this . . . ive pushed u away for the last time . . . ive had plenty of chances. I will allow u to heal. I will allow u to move on. I will not interfere i just wanted to make sure u understood who i am and where i stand with our child . . . i will not call cps i will not hurt you . . . just do me a solid and dont cook me!!!!

I want u to live your life . . . i want to live mines and be able to not worry about my family and kids losing me to jail . . . whatever u can do or say to the Cyndie Griffith please do it . . . You havr my highest honor as my childs mother . . . I dont need closure i don't need a reason i understand that the time has come . . . The new year is amongst us!!!! Im ready to fix myself through The courts . . . Im not a bad person . . . I just have a dirty mouth . . . I was wrong in every sense but I dont deserve to goto jail . . . Let karma do your dirty work let me be free to see u move on and be happy cause that will be the ultimate heartbreak for me!!! im sure u want me to hurt . . . but anyways . . . Life is too short. . .

3

You are responsible for your two kids now!!!! Make sure you're there for them make sure you love them make sure theyll remember how strong you are!!!!!

Stinson called 911 on December 25th.

On December 28th, Nguyen sent another 28 text messages to Stinson including

a photo of a torn anniversary card:

Its crazy how one simple card can bring all the feelings that i wanted to get rid of I STILL DREAM ABOUT US YOUR NOT EASILY REPLACEABLE . . . WE CROSSED PATHS TO STRENGTHEN EACHOTHER TO HELP EACH OTHER GROW . . . NOW THE TIME HAS COME I MEAN HAS BEEN CAME . . . TO WHERE WE TAKE WHAT WE TAUGHT EACH OTHER AND FIND SOMEBODY TO USE IT ON . . . IN THAT LIGHT YOU WERE THE BEST THING THAT EVER HAPPEN TO ME . . . I DONT REGRET A SINGLE MOMENT . . . ALL WE HAVE OUR THE MEMORIES . . . CAUSE I KNOW YOU STILL REMEMBER THE GOOD RATHER THAN THE BAD AND IF U REMEMBER THE BAD REMIND YOURSELF OF WHAT IT TAUGHT YOU!!! I KEEP HARASSING U WITH OUR BULLSHIT BUT FOR 3 YEARS I'VE BEEN DOING EXACTLY THIS. . . REMINDING YOU WHY WERE SO PERFECT . . . YOU DID NOTHING WRONG EVER YOU JUST GAVE YOUR HEART AWAY TO SOMEBODY THAT WASN'T READY TO RECEIVE IT. . .

I DONT WANT U . . . Hurting any more . . . Me and michele had a baby young and we stuck together . . . understand theyre was no real love at the foundation . . . we never got a chance to get to know eachother . . . she did not know my favorite color and ive known her since we were in elementary . . . its not the time that matters it's the quality of the time. . . our time was filled with my lies . . . my childish games . . . i try to play a player . . . and lost . . . I THOUGHT HOLDING ON WOULD SHOW U MORE THAN anything . . . I may not ever feel like this about u ever again. . . but i will always have love for u!!! ITS NOT THE SAME LOVE FOR MICHELE IT'S THE LOVE OF THE ONE THAT I LET SLIPPED AWAY. . . YOU WERE ALWAYS BETTER THAN MICHELE IN MY EYES . . . I JUST WISH U COULDVE SEEN THAT! IF U DONT WANT ME IN [K.N's] LIFE . . . I WONT SHOW UP TO COURT . . . I DON'T WANT U TO EVER SEE MY FACE OR DEAL WITH ME AGAIN . . . HAPPY 2017 . . . LETS LEAVE US IN THE PAST . . . I WILL . . . I KNOW U HAVE Last txt ive gotten ever single thing out!

Stinson did not answer these text messages and again called 911. Responding officers

found Stinson visibly upset.

4

Nguyen continued calling and sending text messages, sending 21 messages on December 29th and 34 messages on December 30th. On December 29th, Nguyen sent the following text messages:

> WHAT DO I GOTTA DO TO GET U TO SPEAK TO ME For 5 minutes I forseen this Wishing i could change gods plan for us. I know i cant buy forgiveness Im only buying moments that o lost with [K.N.] Moments ill never get back Moments that ill regret not fighting for When your in a losing battle You surrender your pride and ego Cause love was my foundation . . . and i could never let u starve
>
> You should've never had a baby by me cause now you're a forever. . . i cant let u go over temporary feelings Ill starve before i allow u to . . . If this is a test . . . Ived failed . . . 5 minutes of your time For 18 years of freedome freedom
>
> Disregard everything if I do this one more time please feel free to call the cops I know this is some bullshit I wont ever allow myself to bug u again if u want me to claim her ill give u whatever I get for her 100 percent. I worked quite a bit this year . . . just saying

On December 30th, Nguyen asked to bring his other daughter over to visit K.N. for an hour.

> I see your back in your bubble Shake that shit off I need u to be solid for [K.N.] I can't imagine losing my mom. She's everywhere. She's in your hear she's in your mind shes the bird shes the sky shes next to you right now keeping you sane watching over her grand kids. As long as you keep her on your soul she'll always be there. Dont lose faith. Dont lose hope. Dont fear change. I need u to be there for [K.N.]
>
> Let me come see my child Let me and reyna come see our family bro Stop the petty stuff Reyna ain't seen her since summer U dont have a good enough reason to deny [K.N.] of her sister and father Before the courts send me back to jail cause u told on mr again if im petty than your petty as fuck Give me and reyna an hour PLEASE U CANT HATE ME THIS MUCH
>
> Let me see my child the person I went to jail for You ever think u done enough damage already? Yup ill stop
>
> Finally man up huh? You'll always run away from me. . . youll always be the petty one. . . im younger than u and i have more sense than u

5

Im already going back i got the papers for court Thank u All ive done was try to be there for u 2

Let me atleasr drop reyna off for an hour?? The only way you face your problems is to get rid of them huh? Fuck it!! Here bring a cig Okay i love u Lets give it one more try Im done See u in ten years Ill back off since u wanna be petty U suppose to think about everybody but yourself as a cancer i see thats not in your character

Stinson called 911. When officers arrived, Stinson was distraught and looking around nervously.

The State charged Nguyen with two counts of domestic violence felony violation of a court order and felony stalking. The first count of violating a no-contact order was for violating no-contact orders between December 18th and 25th that protected Stinson. The second count of violating a no-contact order was for violating no-contact orders, on or about December 18th that protected K.N. The felony stalking charge alleged that between December 26th and 30th, Nguyen "without lawful authority, intentionally and repeatedly harass[ed] or follow[ed] Lisa M Stinson."

Nguyen sought to limit the admission of evidence of prior bad acts and convictions. Nguyen also asked the trial court to sever the no-contact order violations from the felony stalking charge. Nguyen further offered to stipulate to the fact of prior predicate convictions, but the State sought to admit the prior convictions to prove that Nguyen knowingly violated the no-contact orders. The State also sought to admit prior bad acts to show Stinson's reasonable fear of Nguyen and that Nguyen was previously convicted of harassing Stinson, which elevated the stalking charge from a gross misdemeanor to a felony.[1]

---

[1] RCW 9A.46.110(5)(b)(i) elevates a stalking charge from a gross misdemeanor when "[t]he stalker has previously been convicted in this state or any other state of any crime of

The trial court denied Nguyen's motions to sever the charges and stipulate to the prior convictions. The trial court ruled that redacted versions of the no-contact orders, associated plea agreements, and convictions were admissible to show knowledge and to prove the predicate convictions of violating a no-contact order and a prior conviction for harassment. The trial court ruled that limited testimony about prior bad acts was admissible to show Stinson's reasonable fear.[2]

The jury convicted Nguyen of all counts. The court sentenced Nguyen to 42 months in prison and 42 months of community custody. Nguyen appeals.

II.

Nguyen presents his primary argument in the alternative: (1) that the stalking statute proscribes constitutionally protected speech and is thus facially overbroad or (2) if the statute only proscribes unprotected speech, then the State failed to prove that his communications with Stinson fell within the narrow list of unprotected speech. We disagree. Nguyen's argument ignores that a violation of the stalking statute is not based on the content of pure speech. Instead, the statute contains an important mens rea element: the statute is only violated based on an "intent to harass" with a course of conduct that seriously alarms, annoys, harasses, or is detrimental to the victim.

We review de novo a trial court's interpretation of constitutional provisions and legislative enactments. State v. Bradford, 175 Wn. App. 912, 922, 308 P.3d 736 (2013). Overbreadth challenges under both article I, section 5 of the Washington State Constitution and the First Amendment are reviewed under the federal overbreadth

---

harassment, as defined in RCW 9A.46.060, of the same victim or members of the victim's family or household or any person specifically named in a protective order."

[2] Reasonable fear is an element of stalking. RCW 9A.46.110.

analysis. State v. Lee, 135 Wn.2d 369, 387, 957 P.2d 741 (1998); Bradford, 175 Wn. App. at 922.

"A law is overbroad if it sweeps within its prohibitions constitutionally protected free speech activities." City of Seattle v. Huff, 111 Wn.2d 923, 925, 767 P.2d 572 (1989). In determining overbreadth, "a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, 102 S. Ct. 1186, 1191, 71 L. Ed. 2d 362 (1982). If not, then the overbreadth challenge fails. Hoffman Estates, 455 U.S. at 494. The mere fact, however, "that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." Bradford, 175 Wn. App. at 922. "A statute regulating behavior and not pure speech will not be overturned unless the overbreadth is both real and substantial in relation to the statute's legitimate sweep." Lee, 135 Wn.2d at 388 (citing Broadrick v. Oklahoma, 413 U.S. 601, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973)); Bradford, 175 Wn. App. at 922.

The challenged portion of the stalking statute RCW 9A.46.110(1) provides, in relevant part:

(1) A person commits the crime of stalking if, without lawful authority and under circumstances not amounting to a felony attempt of another crime:

(a) He or she intentionally and repeatedly harasses or repeatedly follows another person; and

(b) The person being harassed or followed is placed in fear that the stalker intends to injure the person, another person, or property of the person or of another person. The feeling of fear must be one that a reasonable person in the same situation would experience under all circumstances; and

(c) The stalker either:

(i) <u>Intends to frighten, intimidate, or harass the person</u>; or

(ii) <u>Knows or reasonably should know</u> that the person is afraid, intimidated, or harassed even if the stalker did not intend to place the person in fear or intimidate or harass the person.

(Emphasis added).

"Harasses" means "unlawful harassment" as defined in RCW 10.14.020, which, in turn, means:

<u>a knowing and willful course of conduct</u> directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose. The course of conduct shall be such as would cause a reasonable person to suffer substantial emotional distress, and shall actually cause substantial emotional distress to the petitioner, or, when the course of conduct would cause a reasonable parent to fear for the well-being of their child.

RCW 10.14.020(2) (emphasis added).

"Course of conduct" means:

a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. "Course of conduct" includes, in addition to any other form of communication, contact, or conduct, the sending of an electronic communication, <u>but does not include constitutionally protected free speech. Constitutionally protected activity is not included within the meaning of "course of conduct."</u>

RCW 10.14.020(1) (emphasis added).

"Contact" includes:

In addition to any other form of contact or communication, the sending of an electronic communication to the person.

RCW 9A.46.110(4).

In <u>Bradford</u>, this court addressed overbreadth and vagueness challenges to the harassment provision of the stalking statute. In support of his overbreadth challenge, Bradford contended that the legislature, when enacting the stalking statute, did not intend for the definition of "course of conduct" in RCW 10.14.020(1) to apply. <u>Bradford</u>,

9

175 Wn. App. at 924. We disagreed and determined that in analyzing the scope of "harasses," we apply the definition of "course of conduct" to the stalking statute. Id. (citing State v. Kintz, 169 Wn.2d 537, 545-56, 238 P.3d 470 (2010); State v. Becklin, 163 Wn.2d 519, 527-28, 182 P.3d 944 (2008)). We consequently concluded:

> By so doing, it becomes obvious that the stalking statute's proscriptions do not intrude upon constitutionally protected activities because the plain language of the definition of the term "course of conduct" explicitly excludes from its scope such activities. The text of RCW 10.14.020(1) expressly declares that "'[c]ourse of conduct' . . . does not include constitutionally protected free speech. Constitutionally protected activity is not included within the meaning of 'course of conduct.'" Thus, the stalking statute explicitly does not criminalize actions—"a course of conduct"—that are constitutionally protected.
>
> In defining the term, "harasses," the stalking statute incorporates the definition of "course of conduct" set forth in RCW 10.14.020(1). That language specifically excepts from its reach constitutionally protected free speech activity. Therefore, Bradford's facial overbreadth challenge to the stalking statute fails.

Bradford, 175 Wn. App. at 924-25.

Relying in part on Bradford, Nguyen now contends that the harassment provision of the stalking statute can only pass constitutional muster if the proscribed language is not constitutionally protected free speech. In other words, Nguyen contends that to commit stalking through harassment requires proof that the defendant's speech falls within a categorical exception to the First Amendment. This includes categories of speech such as libel, child pornography, fighting words, and true threats—speech that by its very nature is constitutionally unprotected because the speech is of such slight social value in relation to the clear social interest in order and morality. State v. E.J.Y., 113 Wn. App. 940, 948-49, 55 P.3d 673 (2002) (citing Chaplinsky v. State of New Hampshire, 315 U.S. 568, 571-72, 62 S. Ct. 766, 86 L. Ed. 1031 (1942)).

Nguyen extends the narrow holding in Bradford too far. Because the question in Bradford was whether the definition of "course of conduct" was applicable to the stalking statute, its holding was limited. Bradford assumed, but did not decide whether the stalking statute proscribed "pure speech." Bradford did not address whether speech, other than categorically unprotected speech, can be proscribed when that speech is combined with conduct intended to frighten, intimidate, or harass the target. Nguyen's argument ignores that a violation of the stalking statute is not based on the content of pure speech. Instead, the statute has an important mens rea element: the harassment provision of the stalking statute is only violated based on an intentional course of conduct that seriously alarms, annoys, harasses, or is detrimental to the victim. This intentional course of conduct is not protected by the First Amendment.

The stalking statute prohibits conduct, with speech incidentally regulated. "When 'speech' and 'nonspeech' elements are combined in the same course of conduct, sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." U.S. v. O'Brien, 391 U.S. 367, 376, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968) (holding that the purpose of the statute was to criminalize the conduct of destruction of draft cards and was unrelated to the suppression of free expression).

Furthermore, "where matters of purely private significance are at issue, First Amendment protections are often less rigorous" because "restricting speech on purely private matters does not implicate the same constitutional concerns as limiting speech on matters of public interest." Snyder v. Phelps, 562 U.S. 443, 452, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011). A statute aimed at punishing criminal conduct, such as

11

repeated harassment associated with stalking, is not punishment on the basis of the expression of beliefs and ideas, or the "robust debate of public issues." See Snyder, 562 U.S. at 452 (distinguishing speech on matters of public interest and matters of private concern, finding the former occupies the highest rung of the hierarchy of First Amendment values, while regulating the latter does not risk interfering with a meaningful dialogue of ideas).

For example, in State v. Hegge, 89 Wn.2d 584, 574 P.2d 386 (1978), our Supreme Court addressed a First Amendment overbreadth challenge to Washington's former witness tampering statute, RCW 9.69.080.[3] While the defendants argued that the statute proscribed speech, the Court disagreed, explaining:

> We do not agree with defendants that RCW 9.69.080 is a pure speech statute, as it encompasses illegal conduct. For example, either forcefully detaining a witness from appearing in court, or payment of money to a witness for refraining from appearing, if done with intent to obstruct the course of justice, is clearly within the purview of the statute. Therefore, according to Broadrick [413 U.S. at 615], overbreadth "must not only be real, but substantial" in order for the statute to be struck down. RCW 9.69.080 is clearly not substantially overbroad.
>
> But regardless of whether the statute is deemed to regulate only spoken words, or speech and conduct both, defendants cannot properly invoke the doctrine of facial overbreadth. As stated in Broadrick, facial overbreadth has no applicability where, as here, the statute has been given a limiting construction.
>
> The limiting factor in RCW 9.69.080 is that, to constitute a crime, an endeavor to prevent a witness from appearing must have been made with the intent to obstruct the course of justice.

---

[3] "Every person who shall conspire to prevent, by persuasion, threats, or otherwise, any person from appearing before any court, or officer authorized to subpoena witnesses, as a witness in any action, proceeding, trial, investigation, hearing, inquiry, or other proceedings authorized by law, with intent thereby to obstruct the course of justice, shall be guilty of a felony and shall be punished by imprisonment in the state penitentiary for a term of five years." RCW 9.69.080. This statute has since been repealed and replaced by RCW 9A.72.090-.120.

Hegge, 89 Wn.2d at 590-91. See also State v. CLR, 40 Wn. App. 839, 844-45, 700 P.2d 1195 (1985) (affirming obstruction of police officer statute, RCW 9A.76.020(3), because of limiting element of intent).

Similarly, in State v. Alexander, 76 Wn. App. 830, 832-33, 888 P.2d 175 (1995), this court rejected an overbreadth challenge to the telephone harassment statute that makes it unlawful to call "another person with intent to harass, intimidate, torment, or embarrass." RCW 9.61.230. We concluded that the "telephone harassment statute primarily regulates conduct, with minimal impact on speech." Alexander, 76 Wn. App. at 837. We reiterated:

> The government has a strong and legitimate interest in preventing the harassment of individuals. The telephone, a device used primarily for communication, presents to some people a unique instrument through which to harass and abuse others. Because the telephone is normally used for communication does not preclude its use in a harassing course of conduct . . .
>
> Prohibiting harassment is not prohibiting speech, because harassment is not a protected speech. Harassment is not communication, although it may take the form of speech. The statute prohibits only telephone calls made with the intent to harass. Phone calls made with the intent to communicate are not prohibited. Harassment, in this case, thus is not protected merely because it is accomplished using a telephone.

Alexander, 76 Wn. App. at 837 (emphasis added) (quoting Thorne v. Bailey, 846 F.2d 241, 243 (4th Cir.), cert. denied, 488 U.S. 984, 109 S. Ct. 538, 102 L. Ed. 2d 569 (1988)).

Here, as with the telephone harassment statute, the harassment provision of the stalking statute does not proscribe pure, protected speech. Instead it proscribes a course of conduct where the defendant "intentionally and repeatedly harasses . . .

another person," and either "[i]ntends to frighten, intimidate, or harass the person," or "knows or reasonably should know that the person is afraid, intimidated or harassed." RCW 9A.46.110(1).

The jury heard testimony about Nguyen and Stinson's relationship and Nguyen's physical abuse of Stinson. Stinson testified that, based on her past experiences with Nguyen, which included several incidents of physical assaults and breaking down her front door twice, that she was fearful he would harm her or her daughter.[4] Nguyen's course of conduct included repeated and unwanted calls, text messages, and visits to her house. These actions formed the basis for the felony stalking conviction, not the words contained in the text messages. Based on Stinson's past experiences with Nguyen, her fear was objectively reasonable. There is sufficient evidence to support Nguyen's conviction for felony stalking.

### III.

Nguyen next contends that the trial court abused its discretion when it did not grant his motion for separate trials on the no-contact order and stalking offenses. We disagree.

---

[4] During the trial, Stinson testified to several past incidents where Nguyen physically assaulted her in addition to the December 2016 text messages and phone calls. They included: (1) an argument where Nguyen hit her and busted her lip, (2) an event where she told Nguyen to leave while holding a bat but Nguyen grabbed the bat from Stinson and hit her in the leg leaving her unable to walk for a week, (3) an event where Nguyen kicked in Stinson's front door after leaving his keys inside her house because Stinson did not answer the door fast enough, (4) while Stinson was six or seven months pregnant with K.N., Nguyen grabbed her by the throat and pushed her to the ground, (5) in August 2016, Stinson had a friend over at her house and when he left, Nguyen walked up to him and punched him in the face, Stinson saw the altercation and locked the door but Nguyen began banging on the door and eventually kicked in the door.

Stinson also testified that Nguyen wanted to give up his parental rights to K.N., said that he did not think K.N. was his daughter, and that "[s]he can die." Stinson explained this was hurtful and Stinson did not want Nguyen to have contact with K.N.

14

We review a trial court's denial of a defendant's request to sever properly joined offenses for manifest abuse of discretion. State v. Bythrow, 114 Wn.2d 713, 717-18, 790 P.2d 154 (1990). CrR 4.3(a) provides that offenses may be joined in one charging document when the offenses "(1) are of the same or similar character, even if not part of a single scheme or plan; or (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." CrR 4.3(a).

Offenses properly joined under CrR 4.3(a) may be severed if "the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense." CrR 4.4(b). A defendant seeking severance must show that a trial on all counts "would be so manifestly prejudicial as to outweigh the concern for judicial economy." Bythrow, 114 Wn.2d at 718. "Prejudice may result from joinder if the defendant is embarrassed in the presentation of separate defenses, or if use of a single trial invites the jury to cumulate evidence to find guilt or infer a criminal disposition." State v. Russell, 125 Wn.2d 24, 62-63, 882 P.2d 747 (1994).

> In determining whether the potential for prejudice requires severance, a trial court must consider (1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial.

Russell, 125 Wn.2d at 63. "Defendants seeking severance must not only establish that prejudicial effects of joinder have been produced, but they must also demonstrate that a joint trial would be so prejudicial as to outweigh concern for judicial economy." Bythrow, 114 Wn.2d at 722.

The trial court made the following ruling in regard to Nguyen's motion to sever:

> [T]hese are charged appropriately as Counts 1, 2, and 3 are within the same period of time of December—mid December to the end of

15

December 2016. They involve the same parties. They involve the same conduct that—in all three counts. . . .

The Defense's [sic] on each count has been the general of denial. There's no separate defense that I've—I know as of now that has been given to this. I will—and I don't know. I haven't looked at the jury instruction yet and I don't even know if Defense has proposed the jury instructions that I have yet. But it is important to have jury instructions to the jury that will consider each count separately on its own. And the evidence that we have that's admissible on [these] counts are pretty much the same.

The—with—and I know the argument is that the one incident that the State wants to use the photos for, that would be for the element of reasonable fear on Count 3. And I do find that severance is not going to be granted here.

I believe that on the jury instructions would be clear in stating that the reasonable fear element only applies to Count Number 3 and not to the other ones. But the no contact orders, they are coming in for all three counts. And the conduct is the same, the parties are the same, the timing is the same. They're all within the same mode of conduct, that same series of acts that are basically connected together in this period of time.

The defense renewed its motion to sever at several points during the trial, but the court denied each request.

Nguyen contends that the strength of the State's evidence for the violation of a court order protecting K.N. was not strong because it was supported by circumstantial evidence. Circumstantial evidence is not inherently less reliable than direct evidence. State v. Gosby, 85 Wn.2d 758, 766, 539 P.2d 680 (1975). "Whether direct evidence or circumstantial evidence is more trustworthy and probative depends upon the particular facts of the case." Gosby, 85 Wn.2d at 766.

The evidence that Nguyen violated the protective order for K.N. was strong. Between 11:11 p.m. and midnight on December 17th, Nguyen sent text messages to Stinson's phone saying "im coming over," "right now!!" "on the way," and "10 min." Stinson testified that she received a text message saying "come out" and heard a knock

at her front door. Stinson testified that she received the "10 min" text message before she heard the knock. K.N. was sleeping upstairs when Stinson heard the knock. This is strong evidence that Nguyen was within 1000 feet of the residence where K.N. was located, which was prohibited under the no-contact order.

Nguyen also contends that the strength of the State's evidence on the stalking charge was weak because he did not threaten physical harm to Stinson. We disagree. The State presented ample evidence that Nguyen was repeatedly harassing Stinson by calling, texting, and going to her house. This prong weighs against severance because the evidence for all charges was strong.

Next Nguyen contends that, although the court instructed the jury that each count must be decided separately, the State conflated evidence during its closing argument, which prejudiced Nguyen. We disagree.

Nguyen analogizes to State v. Sutherby, 165 Wn.2d 870, 204 P.3d 916 (2009). In Sutherby, the State charged Sutherby with child rape and molestation charges and possession of child pornography charges. Id. at 885. The State's evidence was weaker on the child rape and molestation charges. Id. The State, however, used evidence admissible to prove the possession charge to attack the credibility of his defense to the child rape and molestation charges. Id. During the trial, the prosecutor argued that the presence of child pornography on Sutherby's computer was evidence of his motive to sexually abuse his granddaughter. Id. If the case had been severed, Sutherby's possession of child pornography would have been excluded in a trial for child rape and molestation. Id. at 886. Joinder of the offenses prejudiced Sutherby's ability to mount separate defenses.

17

During closing argument here, the prosecutor referenced the text messages from December 24th as evidence of Nguyen's intent to harass Stinson to prove stalking charge. The prosecutor stated:

> We also have a few text messages that I want to go over briefly just to indicate, you know, this is the defendant intending to harass. And if he didn't intend it, he certainly should have known that what he was doing was harassing. I mean, look at what he's writing on Christmas Eve, "I don't give a fuck about you."
>
> . . .
>
> So we know the dates, we know that the conduct was intentional. We know that it was repeated and we know that it was harassing Lisa. We also know that Lisa was afraid and we know that her fear was reasonable.

While the charging period on the stalking charge was December 26th to December 30th, Nguyen's conduct prior to the charging period can evidence the formation of Nguyen's intent to harass Stinson. Thus, the prosecutor's characterization during closing was not improper.

Since the jury was instructed to decide the charges separately and the prosecutor did not conflate evidence during closing argument, this prong weighs against severance.

Next, Nguyen contends that the 404(b) evidence was not cross-admissible. We agree that some of the 404(b) evidence was not cross-admissible.

The evidence of Stinson's reasonable fear would not be cross-admissible in a separate trial on the no-contact order violations. Stinson testified to the following incidents to establish her reasonable fear: Nguyen "bust[ed]" her lip, hit her in the leg with a baseball bat, pushed her when she was six or seven months pregnant, grabbed her throat, kicked in her front door on two separate occasions and punched one of her friends. These incidents were admissible only to show Stinson's fear as an element of

stalking and were not cross-admissible to show that Nguyen knowingly violated the no-contact orders.

Because of the risk of prejudice, the trial court limited the admissibility of 404(b) evidence and excluded cumulative testimony by Stinson. The trial court allowed only the basic facts related to past convictions, and limited testimony to the type of violation, such as text message or email violations. The trial court, however, excluded the content of the text messages and emails. For example, specific threats to kill were characterized as generalized threats of harm, which avoided retrying Nguyen's prior no-contact convictions. With this evidence, the State showed Stinson's reasonable fear to prove the stalking charge and that Nguyen acted knowingly when violating the court orders, without presenting unduly prejudicial and cumulative evidence.

While some evidence was not cross-admissible, the trial court minimized the risk of prejudice to Nguyen by limiting the testimony, weighing against severance.

The clarity of the defenses weigh in favor of severance when defenses are mutually antagonistic and the defendant demonstrates that presentation of the defenses resulted in prejudice. Watkins, 53 Wn. App. at 270. For example, "[s]everence is required only if a defendant makes a convincing showing that she has important testimony to give concerning one count and a strong need to refrain from testifying about another." Watkins, 53 Wn. App. at 270. Neither party extensively addresses the clarity of the defenses factor in the severance test because Nguyen's defense was a general denial for all counts. Here, Nguyen's defenses were not mutually antagonistic and Nguyen did not take the stand, weighing against severance.

Nguyen has failed to show manifest prejudice as to outweigh the concern for judicial economy. "[A]ll of the factors together are a means of determining whether potential prejudice to a defendant requires severance and must be assed in that light." Watkins, 53 Wn. App. at 273, n.3. Here, all factors weigh against severance, thus we find that the trial court did not abuse its discretion by denying Nguyen's motion to sever the offenses.

## IV.

Nguyen next argues that the trial court abused its discretion when making evidentiary rulings based on ER 403. The standard of review for whether the trial court properly applied ER 403 is abuse of discretion. State v. Johnson, 90 Wn. App. 54, 62, 950 P.2d 981 (1998). A trial court abuses its discretion when its decision is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" State v. McCormick, 166 Wn.2d 689, 706, 213 P.3d 32 (2009).

## A.

Nguyen first contends that the court abused its discretion by admitting four prior convictions with associated guilty pleas (three no-contact order violations and one harassment conviction), and five no-contact orders, and that cumulatively, those documents were unduly prejudicial. We disagree.

When a defendant offers to stipulate to a prior conviction and the State opposes the stipulation, the trial court's decision to accept or deny the request is governed by ER 403. State v. Case, 187 Wn.2d 85, 91, 384 P.3d 1140 (2016). Under ER 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." ER 403.

"Evidence likely to provoke an emotional response rather than a rational decision is unfairly prejudicial." Johnson, 90 Wn. App. at 61. It is likely a reversible error to admit evidence about prior convictions, "unless that evidence pertained to another element of the crime and unless the trial judge properly found that the probative value of such evidence outweighed its significant prejudicial effect." Case, 187 Wn.2d at 91. "The State is not required to accept a defendant's stipulation regarding an element of the crime charged." State v. Taylor, 193 Wn.2d at 691, 697, 444 P.3d 1194 (2019).

The State sought to admit the prior no-contact order and harassment convictions and associated plea agreements to prove Nguyen's predicate convictions and that he knowingly violated the no-contact orders. The State argued that these documents were direct evidence of knowledge because they showed that Nguyen was notified of the no-contact orders in multiple ways: (1) it was explained during his plea hearing, (2) it was written in the judgment and sentence, and (3) the court issued new no-contact orders after the judgment was entered. The State also sought to admit the conviction for harassment as an element of felony stalking and to prove Stinson's fear was reasonable.

The trial court ruled that the statement in the plea of guilty was highly probative of knowledge, the judgment and sentences were probative of knowledge, and outweighed the prejudicial effects. The trial court admitted versions of these documents and redacted irrelevant portions. The trial court ruled that the conviction for harassment was relevant and not unduly prejudicial, tending to prove Stinson's reasonable fear. The trial court did not abuse its discretion by declining to accept Nguyen's stipulation because the State sought to admit these documents as part of its narrative of Nguyen's "thoughts

and actions in perpetrating the offense." Taylor, Wn.2d at 701 (quoting Old Chief v. United States, 519 U.S. 172, 192, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997)).

Nguyen contends that there was sufficient evidence to show knowledge by admitting the signed no-contact orders and that the State did not need to admit the guilty pleas because it was unfairly prejudicial. This argument is without merit, however, because entering the guilty pleas with the no-contact orders was stronger evidence of Nguyen's knowledge than admitting the no-contact orders alone. Each set of documents demonstrated that Nguyen knew that his conduct toward Stinson violated the no-contact orders. Additionally, the violations were recent and numerous, which tended to prove Stinson's reasonable fear. Nguyen fails to show abuse of discretion.

B.

Nguyen next argues that the trial court abused its discretion when it allowed the jury to hear that Nguyen had been convicted of residential burglary. We disagree.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Under ER 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

Nguyen is not challenging the admission of the factual basis underlying the residential burglary conviction, instead he is challenging the State referring to the incident as residential burglary. The State argues that the probative value of allowing the jury to hear that Nguyen had been convicted of residential burglary was that it provided proof that the alleged incident occurred.

22

The trial court found, by a preponderance of the evidence, that the residential burglary occurred and that the underlying facts were admissible to show Stinson's reasonable fear. The facts underlying the burglary conviction are as follows: Nguyen showed up at Stinson's house, a friend of Stinson's was leaving the house, and Nguyen punched him in the face. Then Nguyen knocked on Stinson's door and when she refused to answer, he kicked in her front door.

The probative value of referring to this incident as residential burglary outweighed the risk of prejudice because Nguyen's conviction made Stinson's testimony about the incident more credible. Nguyen fails to show that the trial court abused its discretion by allowing the jury to hear that Nguyen was convicted of residential burglary.

C.

Nguyen argues that the trial court abused its discretion by failing to redact the "warning" provisions of the court orders because they were irrelevant and highly prejudicial. We disagree.

Specifically, Nguyen contends that the State only had to prove that Nguyen knowingly violated the order, not that he knew violating the court order could result in a criminal offense. Nguyen argues that the warning provision states that it is Nguyen's "sole responsibility" to abide by the terms of the no-contact orders and the jury would have presumed that this meant there was no mens rea element. Nguyen analogizes to State v. Townsend, 142 Wn.2d 838, 15 P.3d 145 (2001).

The following language was not redacted from the no-contact orders:

Violation of the provisions of this order with actual notice of its terms is a criminal offense under chapter 26.50 RCW and will subject a violator to arrest; any assault, drive-by shooting, or reckless endangerment that is a violation of this order is a felony. You can be arrested even if the person

23

protected by this order invites or allows you to violate the order's prohibitions. You have the sole responsibility to avoid or refrain from violating the order's provisions. Only the court can change the order upon written application.

The court allowed the warning provision to show that Nguyen knowingly violated the court order.

The warning provision tends to show that Nguyen knowingly violated the court order. The warning provision indicates that violation of the order is a criminal offense under Chapter 26.50 RCW—the chapter under which the State charged Nguyen. Nguyen signed the no-contact orders. The warning provision tends to prove that Nguyen knew contacting Stinson was a violation of the court order. While the reference to felony charges of "assault, drive-by shooting, or reckless endangerment" is prejudicial, the prejudice does not substantially outweigh the probative value of the warning because the risk that the jury would convict based on the reference to other uncharged crimes is minimal.

Furthermore, Townsend is inapplicable here. Under Townsend, the court held that, in a noncapital case, the jury is not allowed to hear about the potential punishment. Townsend, 142 Wn.2d at 846. The "strict prohibition against informing the jury of sentencing considerations ensures impartial juries and prevents unfair influence on a jury's deliberation." Townsend, 142 Wn.2d at 846.

Here, the warning provision did not explain to the jury potential punishment for any of the charged crimes. Instead, the warning provision indicated that "assault, drive-by shooting, or reckless endangerment that is a violation of" the no-contact order is a felony. The warning provision merely explained that Nguyen could be charged with a crime, not the potential punishment upon conviction.

24

Nguyen also argues that by stating Nguyen had the "sole responsibility" to avoid violating the court order, implied that the violation was a strict liability offense. This argument is without merit. The jury was properly instructed that it must find that Nguyen knowingly violated the court order. The warning demonstrated to the jury that Nguyen knew it was a violation of the court order to have contact with Stinson, even if Stinson made the first contact. Thus, Nguyen has not shown that the court abused its discretion by failing to redact the warning provision.

V.

Nguyen next contends that there is a reasonable probability that the cumulative effect of errors affected the outcome at trial. We disagree.

An accumulation of errors that do not individually require reversal may still deny a defendant a fair trial. State v. Coe, 101 Wn.2d 772, 789, 684 P.2d 668 (1984). "The doctrine does not apply where the errors are few and have little or no effect on the outcome of the trial." State v. Weber, 159 Wn.2d 252, 279, 149 P.3d 646 (2006).

Since we find that Nguyen has failed to establish any errors, the cumulative error doctrine does not apply.

VI.

Nguyen provided supplemental briefing requesting remand to strike the $100 DNA collection fee. The State concedes the error. Under State v. Ramirez, the court held that mandatory filing fees cannot be imposed on indigent defendants pursuant to House Bill 1783. 191 Wn.2d 732, 749, 426 P.3d 714 (2018). This applies retroactively to cases pending on appeal. Ramirez, 191 Wn.2d at 747.

We remand to strike the $100 DNA fee and affirm on all other grounds.

_Mann, A.C.J._

WE CONCUR:

_Chun, J._